JAMES B. DIAMOND *v.* GEORGE MARCINEK ET AL.
(9832)

DALY, FOTI and HEIMAN, Js.

Argued December 9, 1991—decision released April 14, 1992

*Richard F. Paladino,* for the appellants-appellees (defendants).

*Kenneth J. McDonnell,* for the appellee-appellant (plaintiff).

DALY, J. The defendants appeal from a judgment rendered by the trial court in favor of the plaintiff. The defendants claim that the trial court improperly (1) found a violation of department of environmental protection (DEP) regulations; Regs., Conn. State Agen-

cies §§ 22a-449 (d)-1 (d) (1) and 22a-449 (d)-1 (f) (1); because the statute and regulations were not alleged in the complaint, (2) granted rescission of the real estate conveyance, and (3) found that the defendants violated the DEP regulation concerning the reporting and transfer of a facility. Regs., Conn. State Agencies § 22a-449 (d)-1. The plaintiff, in his cross appeal, claims that the trial court improperly failed to allow recovery for work done on a farmhouse that was part of the real estate conveyance. We reverse the trial court's award of rescission of the real estate conveyance. Because of our resolution of that claim, we need not address the remaining claims on the appeal or the cross appeal.

The court found the following facts. The plaintiff purchased property in the town of Clinton from the defendants. The transaction was negotiated by the defendants' real estate broker who was acting as their agent. There was a farmhouse on the land. The plaintiff was told that the defendants had used the land to grow vegetables and had sold them at a roadside stand. The plaintiff was also advised that a river located at the rear of the property could be used to supply water for the property. On November 29, 1987, the parties entered into a contract of sale for $215,000, and the property was transferred on December 10, 1987.

The plaintiff began renovating the farmhouse in December and moved there in February, 1988. The plaintiff then discovered that the property had been used as a gas station, and that there were two underground gasoline storage tanks on the property. The defendants admitted that they were aware that the property had been used as a gas station in the past. The defendant George Marcinek testified that his father operated the gas station until approximately 1944. He could not remember exactly when the gas pumps were removed after his father stopped selling gasoline.

On May 24, 1988, the DEP sent a letter to the defendants advising them that they had to submit a Connecticut underground storage tank notification form. The defendants submitted this form on June 3, 1988. According to the information in the form, there were two underground tanks, each with an estimated capacity of 500 gallons. During the summer of 1988, the defendants paid for the removal of the underground tanks. The plaintiff, who was present when the tanks were removed, testified that he saw petroleum-like sludge in one of the tanks.

The plaintiff instituted a four count complaint in this action. In count two, the plaintiff claimed that title to the property was unmarketable because of the underground gasoline tanks. In count three, the plaintiff claimed that the defendants' fraudulent concealment of the existence of the underground tanks caused the value of the property to be greatly diminished. The court found that the evidence failed to establish that title to the property was unmarketable or that the value of the property was diminished. Thus, the court denied relief on both of those counts. In count four, the plaintiff alleged that the defendants had fraudulently concealed problems with the well water system. The court, however, found that the plaintiff failed to prove that the defendants had fraudulently concealed any problems related to the well water system.

On the basis of the allegations in count one of the plaintiff's complaint, the court found for the plaintiff. This count claimed that the defendants had failed to submit a negative declaration to the plaintiff pursuant to General Statutes § 22a-134a (b). The court held that the defendants' nondisclosure about the prior history of the property did not constitute an intentional fraudulent withholding. The court concluded that the defendants "just plain forgot about it." The court nonetheless held that the defendants were required by § 22a-449 (d)-1

of the Regulations of Connecticut State Agencies to notify the transferee, the plaintiff, about the existence of the underground tanks, which fit within the definition of a nonresidential facility as defined in § 22a-449 (d)-1 (a) of the regulations.

The court awarded the plaintiff $2210 as reimbursement for the cost of testing the residential water supply. The court found that the plaintiff failed to prove the existence of any hazardous substances in the land resulting from the underground tanks. The plaintiff also sought to recover the cost of renovations done on the farmhouse. The plaintiff spent approximately $20,000 toward the renovation of the farmhouse. The farmhouse was originally built in 1875, and the court presumed it had historical value. The court noted that there was "no evidence whatsoever of any increase in value to the property by virtue of the work done . . . by the plaintiff and accordingly, the plaintiff cannot recover from the defendants on account of claimed improvements made on a theory of unjust enrichment." The court further stated that "[t]he law does not permit this court to speculate as to whether or not any work done on the property constitutes an improvement or constitutes a detrimental depreciation of value by virtue of destruction of any historic value that this structure may have had."

The court granted the plaintiff's claim seeking rescission of the real estate conveyance. The court reasoned that rescission was appropriate because of the defendants' "negligent concealment" and failure to follow the DEP regulations. Thus, the plaintiff received $2210 as damages and an order rescinding the real estate conveyance. Both the plaintiff and defendants appealed to this court.

The court's award of rescission and restitution was based on only count one of the plaintiff's complaint.

According to count one of the complaint, this convey-
ance of property constituted a transfer of a service sta-
tion as defined in General Statutes § 22a-134 (7).[1]
Because this was a transfer of a service station, the
defendants were required to submit a negative decla-
ration to the plaintiff stating that there was no haz-
ardous waste on the property. General Statutes
§ 22a-134 (5).[2] A violation of any of the provisions
related to the transfer of hazardous waste establish-
ments makes the transferor liable to the transferee "for
all cleanup and removal costs and for all direct and
indirect damages." General Statutes § 22a-134b.

General Statutes §§ 22a-134 through 22a-134d were
enacted to protect purchasers of property from being
liable for the subsequent discovery of hazardous waste
on the property by requiring the transferor of prop-
erty to submit a formal declaration that the property
is free of pollution. See 28 S. Proc., Pt. 6, 1985 Sess.,
p. 1802. These statutes apply to "any establishment
which on or after May 1, 1967, generated more than
one hundred kilograms of hazardous waste per month
. . . ." General Statutes § 22a-134 (3). Clearly, these

---

[1] General Statutes § 22a-134 (7) provides: " 'Transfer of a service sta-
tion' means a transfer, as defined in this section, of a service station or
any other transaction or proceeding whereby a service station, or any part
thereof, undergoes a change in ownership, including, but not limited to,
a sale of stock in the form of a statutory merger or consolidation, a sale
of the controlling share of assets, the conveyance of real property or a
change of corporate identity or financial reorganization, but excluding cor-
porate reorganization not substantially affecting the ownership of the ser-
vice station."

[2] General Statutes § 22a-134 (5) provides in pertinent part: " 'Negative
declaration' means a written declaration on a form prescribed by the com-
missioner stating (1) that there has been no discharge, spillage, uncontrolled
loss, seepage or filtration of hazardous waste on-site, or that any such dis-
charge, spillage, uncontrolled loss, seepage or filtration has been cleaned
up in accordance with procedures approved by the commissioner or deter-
mined by him to pose no threat to human health or safety or the environ-
ment which would warrant containment and removal or other mitigation
measures . . . ."

underground tanks, which stopped being used in the 1940s, did not fit within that definition. The court also found that the plaintiff failed to prove the existence of any hazardous waste in or on the property. The court held that "[t]here is no evidence from which the court can find that there was any leaking of any substance from either of these tanks." The defendants were not required to submit a negative declaration because this conveyance did not constitute a transfer of an establishment subject to the provisions of § 22a-134.

The defendants also were not required to file a certificate concerning the past use of this property as a service station under General Statutes § 22a-134a (d). Section 22a-134a (d) prevents the imposition of a state lien against real estate as security for any resulting costs of cleaning up hazardous waste if "the transferor certifies to the transferee that (1) the service station, or any part thereof, complies with regulations adopted by the commissioner of environmental protection pursuant to subsection (d) of section 22a-449 concerning design, construction, installation and maintenance of underground facilities storing oil or petroleum liquids . . . ." This section requires certification by the transferor only if the transferred service station was operating on or after May 1, 1967. General Statutes § 22a-134a (d). This service station ceased operation in the mid 1940s. The filing of a negative declaration applies only to establishments or service stations that were operating on or after May 1, 1967. Therefore, the defendants did not have a duty under this section to notify the plaintiff about the existence of these underground tanks. Even though there was not a violation of § 22a-134a, the defendants, paid for the removal of the tanks, which is a recognized form of relief under § 22a-134b.

This court can find plain error on matters not distinctly raised at trial. Practice Book § 4185. "An error must have two characteristics before it can be classi-

fied as 'plain error.' First, the error must be discernible from the face of a factually accurate record. *Cahill* v. *Board of Education,* 187 Conn. 94, 100–101, 444 A.2d 907 (1982). Second, the court's recognition of the error must be 'in the interests of justice.' Practice Book § 4185." *Sciola* v. *Shernow,* 22 Conn. App. 351, 360, 577 A.2d 1081, cert. denied, 216 Conn. 815, 580 A.2d 60 (1990). A determination of plain error derives "not by reason of the appellant's right to have it determined but because, in our opinion, in the interest of . . . justice between the parties it ought to be done." *Kavanewsky* v. *Zoning Board of Appeals,* 160 Conn. 397, 401, 279 A.2d 567 (1971). On the basis of the trial court's findings, we find that the court's award of rescission and restitution constituted plain error.

The defendants argued that the DEP regulations did not apply because the plaintiff failed to state them in the complaint and also because the plaintiff failed to prove that these tanks constituted a nonresidential facility. The defendants did not challenge the trial court's finding that these underground tanks were both an existing facility and an abandoned or temporarily out of service facility. We conclude that these underground tanks constituted only an abandoned or temporarily out of service facility.

An "existing facility" is broadly classified as "a facility, the construction or installation of which began prior to the effective date of these regulations." Regs., Conn. State Agencies § 22a-449 (d)-1 (a). These underground tanks technically fit within this definition because they were installed long before the effective date of these regulations. The DEP regulations, however, also refer to "temporarily out-of-service" facilities. " 'Temporarily out-of-service' means not in use, in that no regular filling or drawing is occurring; or not established and maintained in accordance with these regulations; or not regularly attended and secured." Regs., Conn. State Agencies § 22a-449 (d)-1 (a). These under-

ground tanks fit within this more narrow classification instead of the "existing facility" classification. There had been no regular filling or drawing from these tanks for over forty years. These tanks were installed long before these DEP regulations and, thus, were not maintained in accordance with them. The tanks had not been regularly attended and secured since the 1940s when George Marcinek's father stopped using them. The gas pumps that were attached to the underground storage tanks were removed during the 1950s. Without the aboveground gas pumps connected, these tanks could not be used. Thus, they could also be classified as abandoned under the DEP regulations. " 'Abandoned' means rendered permanently unfit for use." Regs., Conn. State Agencies § 22a-449 (d)-1 (a). Thus, the trial court should have classified these tanks as temporarily out of service or abandoned and not as an existing facility.

The distinction between an "existing facility" and an "abandoned facility" or "temporarily out-of-service facility" is very important in this case. The DEP regulations regarding an abandoned or temporarily out of service facility required the defendants only to notify the commissioner about the existence of the facility. Regs., Conn. State Agencies § 22a-449 (d)-1 (d) (4).[3] The defendants ultimately satisfied this requirement after they conveyed the property to the plaintiff. The duty of disclosure owed by the defendants to the plaintiff concerning these tanks arises only if this conveyance constituted a "transfer . . . of any new or existing facility." Regs., Conn. State Agencies § 22a-449 (d)-1 (f) (1).[4]

---

[3] Section 22a-449 (d)-1 (d) (4) of the Regulations of Connecticut State Agencies provides: "By May 8, 1986, the owner or operator of an abandoned or temporarily out-of-service facility shall notify the commissioner of the location, type and capacity of such facility and the date it was abandoned or removed from service."

[4] Section 22a-449 (d)-1 (f) (1) of the Regulations of Connecticut State Agencies provides: "No owner or operator shall transfer ownership, possession or control of any new or existing facility without full disclosure to

The disclosure would have to occur fifteen days before the transfer. Regs., Conn. State Agencies § 22a-449 (d)-1 (f) (1). It was the application of this DEP regulation that led the court to award rescission and restitution. Section 22a-449 (d)-1 (f) (1) of the regulations did not apply to this case because this conveyance did not involve the transfer of "a new or existing facility." The court's finding that the defendants owed a duty of disclosure to the plaintiff based on § 22a-449 (d)-1 (f) (1) of the regulations was not supported by the law or the facts and, thus, constituted plain error.

An award of rescission is justified "if there has been a material misrepresentation of fact upon which a party relied and which caused it to enter the contract. . . . The material misrepresentation, when made in connection with the sale of land, may be an innocent misrepresentation." (Citations omitted.) *Kavarco* v. *T.J.E., Inc.*, 2 Conn. App. 294, 298, 478 A.2d 257 (1984). Here, the defendants did not make any misrepresentation about their use or characteristics of this property. Even if the innocent nondisclosure about the underground tanks constituted a misrepresentation, it was not a material breach in this case. The defendants paid for the removal of the tanks after the plaintiff took possession of the property upon notification by the plaintiff's attorney. There was no evidence that this property was contaminated due to the presence or removal of the tanks. The plaintiff received what he believed he bargained for after the defendants removed the tanks. The nondisclosure about the underground tanks was, at best, a harmless misrepresentation under the facts of this case.

---

the transferee of the status of the facility with respect to compliance with these regulations at least fifteen (15) days prior to the transfer. Such disclosure shall include an up-to-date copy of the information submitted to the commissioner pursuant to subsection (d)."

The plaintiff relies on the language in *Kavarco* v. *T.J.E., Inc.,* supra, 299–300, to support the court's award of rescission and restitution: "The purchase of real estate for a residence happens infrequently in the lifetime of the average family. The very fact that the land did not have the fundamental characteristics which were attributed to it by the seller is sufficient in and of itself to show that the buyer suffered damage or irreparable harm." An award of rescission does not require proof of monetary damages suffered by the plaintiff. Id., 299. The plaintiff in this case was advised by the defendants' real estate agent that they had used the property as a residence and vegetable farm. There was no showing that this was a false statement or that the property in fact was contaminated such that it was unable to be used as a residence or vegetable farm. After the defendants removed the tanks, the land still retained its fundamental characteristics. Thus, because of the factual findings of the trial court, the plaintiff's reliance on *Kavarco* v. *T.J.E., Inc.,* supra, 299–300, to justify a rescission based on the defendants' nondisclosure about the underground tanks is misplaced.

We recognize "that the decision to award a remedy for rescission . . . always depends upon a showing of what justice requires in the particular circumstances, and thus necessarily rests in the discretion of the trial court." *Burt's Spirit Shop, Inc.* v. *Ridgway,* 215 Conn. 355, 361, 576 A.2d 1267 (1990). The trial court's incorrect interpretation of the DEP regulations was the only basis for awarding rescission and restitution. The court clearly found that the nondisclosure about the existence of the underground tanks did not constitute fraudulent conduct by the defendants. There was no reason to rescind this transaction based on the trial court's findings that the defendants' nondisclosure was in no way fraudulent, that the defendants immediately complied with the DEP regulations and paid for the removal of

the tanks and that the plaintiff failed to establish any harm or damages resulting from the defendants' non-disclosure. There was no other basis in the trial court's decision that justified an award of rescission and restitution. Thus, we conclude that the award of rescission and restitution constituted an abuse of discretion by the trial court.

Our resolution of the rescission claim renders the cross appeal moot because the plaintiff will retain the farmhouse and its improvements, thus he can no longer claim that the defendants were unjustly enriched.

The judgment awarding rescission and restitution is reversed and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.