JAMES B. DIAMOND *v.* GEORGE MARCINEK ET AL.
(14572)

PETERS, C. J., BORDEN, BERDON, NORCOTT and PALMER, Js.

Argued April 30—decision released August 3, 1993

*Kenneth J. McDonnell,* for the appellant (plaintiff).

*Richard F. Paladino,* for the appellees (defendants).

*Richard Blumenthal,* attorney general, and *Joseph Rubin* and *Grace M. Dodier,* assistant attorneys general, filed a brief for the commissioner of environmental protection as amicus curiae.

PETERS, C. J. The dispositive issue in this certified appeal is whether unused underground gasoline storage tanks constitute an "existing facility" for the purpose of the disclosure requirement of § 22a-449 (d)-1 (f) of the Regulations of Connecticut State Agencies.[1] The plaintiff, James B. Diamond, brought this action for rescission and restitution against the defendants, George Marcinek and Leona Marcinek, grounded on the defendants' nondisclosure of the presence of unused underground gasoline storage tanks on property that they conveyed to the plaintiff. The trial court rendered judgment in favor of the plaintiff, and ordered the defendants to accept reconveyance of the property. The defendants appealed from the judgment to the Appellate Court, which subsequently reversed the trial

---

[1] Section 22a-449 (d)-1 (f) of the Regulations of Connecticut State Agencies provides: "CONTROL OF THE NONRESIDENTIAL UNDERGROUND STORAGE AND HANDLING OF OIL AND PETROLEUM LIQUIDS . . . .

"(f) TRANSFER OF FACILITIES

"(1) No owner or operator shall transfer ownership, possession or control of any new or existing facility without full disclosure to the transferee of the status of the facility with respect to compliance with these regulations at least fifteen (15) days prior to the transfer. Such disclosure shall include an up-to-date copy of the information submitted to the commissioner pursuant to subsection (d)."

court's judgment. We granted the plaintiff's petition for certification to appeal from the judgment of the Appellate Court,[2] and now reverse.

The following relevant facts are undisputed. The plaintiff purchased property, located in Clinton, from the defendants. In the course of negotiations prior to the sale, the defendants represented to the plaintiff that the property was fit for residential use, that it contained a farmhouse, a well and a stream, and had been used to grow vegetables. The plaintiff did not inquire regarding any prior nonresidential use of the property. After the plaintiff had taken possession, he learned that the defendants' family had used the property as an automobile service station in the 1930s and 1940s and that, although the station had been dismantled and removed in the mid-1950s, the property still contained the unused underground gasoline storage tanks (tanks) that had been associated with the service station. Upon subsequent inquiry by the plaintiff, the defendants acknowledged the past operation of the service station and the existence of the tanks, as well as their failure to reveal this information to the plaintiff. They also paid the cost of the removal of the tanks from the property.

The plaintiff thereafter initiated this action for rescission and restitution, claiming that the defendants should have informed him of the existence of the tanks prior to the property transfer. Specifically, the plaintiff's complaint alleged that the defendants: (1) should have provided him with a negative declaration pursuant to General Statutes § 22a-134a (b);[3] (2) had violated an implied covenant of warranty because the title was unmarketable; (3) had, by fraudulently concealing the

---

[2] See footnote 6.

[3] General Statutes § 22a-134a (b) provides: "NEGATIVE DECLARATION
. . . .
"(b) Prior to transferring an establishment, the owner or operator shall submit a negative declaration to the transferee and shall, within fifteen

prior use of the property, caused the plaintiff to make improvements at his own expense; and (4) had fraudulently concealed well water shortages. Prior to trial, the plaintiff moved to amend his complaint to include a nondisclosure claim pursuant to § 22a-449 (d)-1, the department of environmental protection (DEP) regulation in issue here.[4] The defendants objected, and the court subsequently denied the motion. During the course of the trial, the plaintiff nonetheless introduced evidence regarding his claim that the defendants had violated the regulation.

The trial court rendered judgment for the plaintiff on the sole basis that, pursuant to § 22a-449 (d)-1, the defendants should have disclosed the existence of the tanks to the plaintiff at least fifteen days before the transfer. Accordingly, the court ordered reconveyance of the property to the defendants and repayment of the purchase price. It did not, however, grant the plaintiff's claim for restitution because it found too speculative the claimed damages pertaining to certain improvements to the farmhouse that the plaintiff had made.

The defendants appealed to the Appellate Court from the judgment in favor of the plaintiff. See *Diamond* v. *Marcinek,* 27 Conn. App. 353, 606 A.2d 1001 (1992). In that court, they claimed that the trial court had improperly relied on § 22a- 449 (d)-1 in deciding for the plaintiff, because the regulation and violation thereof had not been alleged in the plaintiff's complaint. In addition, the defendants claimed that the court had

days after the transfer, submit a copy of such declaration to the commissioner.''

General Statutes § 22a-134 (3) defines ''establishment,'' in part, as an operation that ''on or after May 1, 1967, generated more than one hundred kilograms of hazardous waste per month or which recycled, reclaimed, reused, handled, treated, transported or disposed of hazardous waste generated by another person or municipality.''

[4] See footnote 1.

improperly found that the defendants had violated the regulation and that it should not have granted the remedy of rescission for the alleged violation of the regulation. Id., 354–55. The plaintiff cross appealed for compensation for the farmhouse improvements. Id., 355.[5]

The Appellate Court reversed the judgment of the trial court on an alternative basis not presented by either party. It concluded, pursuant to a plain error review, that even if § 22a-449 (d)-1 had been properly raised in the trial court, the regulation did not require disclosure to a transferee of the category of unused tanks at issue in this case. Id., 359–64. Specifically, it determined that the tanks, which the regulations defined as "temporarily out-of-service," could not also have constituted an "existing facility" for the purpose

[5] The defendants, who were the appellants before the Appellate Court, presented the following issues: "1. Did the Trial Court err in finding a violation of DEP Regulation 22a-449 (d)-1 . . . (f) because the statute and regulations were not alleged in the Complaint?

"2. Did the Trial Court err in finding that Defendants did not comply with DEP Regulation 22a-449 (d)-1 with respect to the reporting and transfer of a facility?

"3. Did the Trial Court err in finding no statutorily mandated remedy under C.G.S. Sec. 22a-449 (d)?

"4. The Trial Court did not err in finding no damages with respect to the well water system.

"5. Did the Trial Court err in awarding the extraordinary remedy of rescission?"

The plaintiff, who was the appellee and cross appellant before the Appellate Court, presented the following issues: "1. Did the complaint give adequate notice of the Plaintiff's claims that were based on the statutes and regulations that govern gasoline stations and underground storage tanks[?]

"2. Was there sufficient evidence to support the trial court's conclusion that the Defendants violated Connecticut Regulation Section 22a-449 (d)-1[?]

"3. Was the trial court's order of rescission reasonable given the Defendants' negligent failure to disclose and/or failure to comply with Regulation Section 22a-449 (d)-1[?]

"4. Did the trial court have authority to presume that a house constructed in 1875 has historic value that may have been adversely affected by the Plaintiff's renovation work?"

of the disclosure requirement in § 22a-449 (d)-1 (f). Id., 360–61. Having resolved the appeal in favor of the defendants on this ground, the Appellate Court therefore did not reach the issues raised by the parties. We granted the plaintiff's subsequent petition for certification to appeal.[6] *Diamond* v. *Marcinek,* 223 Conn. 910, 612 A.2d 55 (1992).

On appeal the plaintiff maintains that we should reinstate the judgment of the trial court because that court properly determined that § 22a-449 (d)-1 applied to the tanks and that the regulation's provisions required disclosure of their existence. The defendants maintain that we should affirm the judgment of the Appellate Court for the reasons set forth in its decision, as well as the reasons presented to but not decided by the Appellate Court. Because we agree with the plaintiff that the tanks constituted an "existing facility" for the purpose of disclosure pursuant to § 22a-449 (d)-1 (f), we reverse and remand the case to the Appellate Court for resolution of the remaining issues previously raised in that court.

We now turn to the principal inquiry underlying this certified appeal. To determine whether the tanks were subject to the disclosure requirement of § 22a-449 (d)-1 (f), we interpret the regulation, as did the Appellate Court, as promulgated by the DEP in accordance with the definitions included therein. Section 22a-449 (d)-1 (a) defines the various categories of "facility" to which each of the regulation's require-

---

[6] We granted the petition for certification as to the following question: "In the circumstances of this case, was the plaintiff entitled to rescission and restitution relating to rescission because of the defendants' failure to disclose the existence of a service station in violation of General Statutes §§ 22a-134 or 22a-134a or applicable administrative regulations?" *Diamond* v. *Marcinek,* 223 Conn. 910, 612 A.2d 55 (1992).

ments applies.[7] As the Appellate Court correctly observed, "[t]he duty of disclosure owed by the defendants to the plaintiff concerning these tanks arises only if this conveyance constituted a 'transfer . . . of any new or existing facility.' " *Diamond* v. *Marcinek,* supra, 27 Conn. App. 361. It concluded that, because the tanks

[7] Section 22a-449 (d)-1 (a) of the Regulations of Connecticut State Agencies provides in relevant part: "DEFINITIONS

" 'Abandoned' means rendered permanently unfit for use. . . .

" 'Existing facility' means a facility the construction or installation of which began prior to the effective date of these regulations.

" 'Facility' means a system of interconnected tanks, pipes, pumps, vaults, fixed containers and appurtenant structures, singly or in any combination, which are used or designed to be used for the storage, transmission or dispensing of oil or petroleum liquids, including any monitoring devices. As used in these regulations, the term 'facility' refers only to nonresidential underground facilities. . . .

" 'New facility' means a facility the construction or installation of which begins on or after the effective date of these regulations, including but not limited to facilities which replace existing facilities and facilities which are moved from one location to another. . . .

" 'Temporarily out-of-service' means not in use, in that no regular filling or drawing is occurring; or not established and maintained in accordance with these regulations; or not regularly attended and secured. . . ."

Regarding the various disclosure requirements contained in the regulation, among others, compare § 22a-449 (d)-1 (f); see footnote 1; with § 22a-449 (d)-1 (d), which provides in relevant part as follows: "REPORTING

"(1) By May 8, 1986, the owner or operator of each existing facility shall notify the commissioner and the office of the local fire marshal of the results of the life expectancy determination required by subsection (h).

"(2) Within thirty days following completion of installation of a new facility an owner or operator shall notify the commissioner and the office of the local fire marshal of the results of the life expectancy determination required by subsection (h).

"(3) The notification required by subdivisions (1) and (2) of this subsection shall include but not be limited to the following: facility location and capacity, date of installation, contents, type of facility, and type of monitoring systems, if any, results of life expectancy determinations, and any other information which the commissioner deems necessary.

"(4) By May 8, 1986, the owner or operator of an abandoned or temporarily out-of-service facility shall notify the commissioner of the location, type and capacity of such facility and the date it was abandoned or removed from service."

fell within the definition of a "temporarily out-of-service" facility, they could not also be considered an "existing facility." The plaintiff argues, to the contrary, that the tanks, although "temporarily out-of-service," were nonetheless also "existing" and therefore subject to the disclosure requirements of subsection (f). We agree with the plaintiff.

Our explication of the definitions set forth in the regulation is governed by well established rules of construction.[8] As a preliminary matter, we note that the question of whether a regulation applies in a particular case is a question of law; cf. *United Illuminating Co.* v. *Groppo,* 220 Conn. 749, 752, 601 A.2d 1005 (1992); consequently, our review is de novo. Cf. *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care,* 200 Conn. 133, 140–41, 509 A.2d 1050 (1986).

When interpreting regulations, if the provisions are reasonably clear, we need not engage in further construction to ascertain their meaning. See *University of Connecticut* v. *Freedom of Information Commission,* 217 Conn. 322, 328, 585 A.2d 690 (1991). Section 22a-449 (d)-1 (a) defines an "existing facility" as "a facility the construction or installation of which began prior to the effective date of these regulations," November 1, 1985. A "temporarily out-of-service" facility is one that is "not in use, in that no regular filling or drawing is occurring; or not established and maintained in accordance with these regulations; or not regularly attended and secured."[9]

---

[8] "Our rules of statutory construction apply to administrative regulations." *Preston* v. *Department of Environmental Protection,* 218 Conn. 821, 829 n.9, 591 A.2d 421 (1991).

[9] The tanks in this case are properly considered only as having been "temporarily out-of-service," and not also as having been "abandoned," as determined by the Appellate Court. See *Diamond* v. *Marcinek,* 27 Conn. App. 353, 361, 606 A.2d 1001 (1992). To qualify a facility as "abandoned," an

These definitions are clear, and consequently we need not search further to employ them properly.

Applying the plain language of the definitions contained in § 22a-449 (d)-1 (a) to the tanks,[10] we start with the unchallenged fact that the tanks were constructed prior to the adoption of the 1985 regulation, so that they were clearly an "existing facility." It is equally undisputed that at the time of transfer the tanks were no longer in use, at least to the extent that they were not in compliance with the regulation, so that they were "temporarily out-of-service." On the face of the regulation, the fact that the tanks satisfied both definitions does not diminish their satisfaction of each definition separately. As a definitional matter, therefore, because the tanks constituted an "existing facility," the defendants were required to satisfy the disclosure provision of § 22a-449 (d)-1 (f).

The defendants argue, however, that the tanks could not have been both "existing" and "temporarily out-of-service." Although the language of the regulation provides no support for their interpretation, the defendants emphasize the language of other § 22a-449 (d)-1 subsections as indicative of a regulatory intent that the two definitions be mutually exclusive. Although we need not undertake further inquiry if a regulation is

---

owner or operator must comply with the requirements of § 22a-449 (d)-1 (k) of the Regulations of Connecticut State Agencies, which provides in relevant part: "(2) A facility or facility component shall be abandoned in accordance with procedures specified in NFPA 30 [National Fire Protection Association publication number 30, entitled 'Flammable and Combustible Liquids Code']."

The defendants have neither argued nor presented evidence that they abandoned the tanks in accordance with the guidelines of NFPA 30. For the purpose of this appeal, however, our resolution is equally valid whether the tanks were "temporarily out-of-service" or "abandoned."

[10] We proceed on the assumption, as did the Appellate Court, that the tanks in this case, at the very least, constituted a "facility." See footnote 7.

unambiguous; see *Chrysler Corporation* v. *Maiocco,* 209 Conn. 579, 591–92, 552 A.2d 1207 (1989); we reject the defendants' contention on its merits.

The defendants point to § 22a-449 (d)-1 (d) to prove their point. That subsection provides in separate subparts that "(1) [b]y May 8, 1986, the owner or operator of each existing facility shall notify the commissioner and the office of the local fire marshal of the results of the life expectancy determination required by subsection (h). . . . (4) [b]y May 8, 1986, the owner or operator of an abandoned or temporarily out-of-service facility shall notify the commissioner of the location, type and capacity of such facility and the date it was abandoned or removed from service." See also footnote 7; Regs., Conn. State Agencies § 22a-449 (d)-1 (e), (g), (h), (i), (j). We note, however, that regulatory terminology is presumed to retain the same meaning throughout a regulation in its entirety. See *Stamford Ridgeway Associates* v. *Board of Representatives,* 214 Conn. 407, 432, 572 A.2d 951 (1990). Even if there appears to be a conflict between terms, we will interpret them so that the regulation makes sense as a whole. See *State* v. *Burney,* 189 Conn. 321, 327, 455 A.2d 1335 (1983); *Atwood* v. *Regional School District No. 15,* 169 Conn. 613, 621–22, 363 A.2d 1038 (1975). The most that the defendants' argument establishes is that, in subsections that contain references to both definitions, it may be necessary to make a distinction between definitions only in the application of the separate subparts.

We hold further that, even if the definitions were not entirely clear, both the purpose and the DEP's existing interpretation of § 22a-449 (d)-1 support our conclusion that, in a case such as this, the regulation requires a transferor to disclose the existence of the tanks to a potential transferee. The purpose of a statutory and regulatory scheme provides important extrin-

sic evidence to aid judicial interpretation. See *Preston* v. *Department of Environmental Protection,* 218 Conn. 821, 829, 591 A.2d 421 (1991). The purpose of the governing environmental protection statutes and regulations is, manifestly, to safeguard the citizens of the state and to preserve the natural resources. See General Statutes § 22a-422.

In our recent decision in *Starr* v. *Commissioner of Environmental Protection,* 226 Conn. 358, 627 A.2d 1296 (1993), we noted that a property owner may be liable for environmental cleanup cost, regardless of whether the owner created the hazard.[11] In light of the responsibility that the environmental regulations place on landowners, it is essential that a potential owner be given notice of known environmental hazards. The interpretation supported by the defendant would create situations in which a transferee of property would be at risk of liability to the DEP for the cost of necessary environmental cleanup if the transferor could no longer be located. Indeed, in this case, although the defendants have paid to remove the tanks, it is not certain that there exists no residual waste that may in the future impose cleanup costs on the plaintiff. Reading the environmental protection laws as a whole, we conclude that the statutory and regulatory disclosure requirements were designed to minimize such burdens.

Furthermore, we note that the DEP has interpreted[12] the disclosure requirement of § 22a-449 (d)-1 to include

[11] Although recently enacted legislation; Public Acts 1993, No. 93-375, entitled "An Act Establishing An Innocent Landowner Defense in Pollution Cases"; limits an innocent landowner's exposure, the statute does not provide total immunity for the cost of cleanup of latent risks.

[12] The DEP originally interpreted § 22a-449 (d)-1 of the Regulations of Connecticut State Agencies in a March 24, 1988 letter to the defendants informing them that they were in violation of the environmental protection laws. The letter stated that "the presence of underground storage tanks (USTs) at the property" violated § 22a-449 (d)-1, because the defendants

the tanks. The DEP commissioner has statutory authority to enforce the environmental protection laws and to promulgate relevant regulations. See General Statutes §§ 22a-2, 22a-5 and 22a-424. An agency's interpretation of the regulations that are within its jurisdiction is entitled to judicial deference. See *Preston* v. *Department of Environmental Protection,* supra; but see *University of Connecticut* v. *Freedom of Information Commission,* supra, 328. We have recently reaffirmed this principle in *Starr* v. *Commissioner of Environmental Protection,* supra, 372. We see no reason to reject the DEP's interpretation of the regulation in this case.

The judgment is reversed and the case is remanded to the Appellate Court for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.

failed to make "a full disclosure to the transferee of the status of the facility . . . constituting a violation of subsection (f) of the aforementioned State Regulations."

This application of the definition and reporting requirement is reasserted through the DEP's appearance as an amicus curiae.