[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant has filed objections to the court's acceptance CT Page 6248 of the report of Attorney Trial Referee William Phillips pursuant to Practice Book § 440. The action was filed by the plaintiff seeking payment of a promissory note executed by the defendant in the principal amount of $125,000. The note was secured by a security agreement on property in Wilton and given in consideration for the defendant's purchase of two dry cleaning establishments on the property.
The defendant filed five special defenses and a two count counterclaim. The defendant alleged that the plaintiff or her agents dumped hazardous and toxic wastes on one of the Wilton properties, causing the defendant to close the business. In the special defenses, the defendant asserts that: the plaintiff breached the sale and purchase agreement; the plaintiff's breach violated General Statutes § 22a-134; the plaintiff failed to obtain a transfer permit pursuant to § 22a-134; the plaintiff's action violated the Connecticut Unfair Trade Practices Act, General Statutes § 42-1110a et seq. ["CUTPA"]; and there was a lack of consideration for the sale and purchase agreement due to the plaintiff's actions. In the counterclaim, the defendant claimed rescission based on fraudulent misrepresentation and indemnification for liability which arose as to third parties as a result of the plaintiff's conduct.
On January 27, 1994, the referee filed his report recommending that judgment enter for the plaintiff on both the complaint and the defendant's counterclaim.
In his report, the referee made numerous findings of fact, including: (1) the plaintiff is the widow and executrix of the will of Pasqual Limone, who died on November 29, 1985; (2) the plaintiff's husband worked as a dry cleaner for twenty years and owned two establishments in Wilton, but the plaintiff never worked in either establishment; (3) the plaintiff's husband had been president of a dry cleaner's association, was aware of the hazard to the environment in the disposal of used cleaning fluid, was active in hazardous waste disposal programs and kept his cleaning business as a showcase for the industry; (4) in 1988, the plaintiff decided to sell her deceased husband's business, which consisted of "Magic Touch," which had cleaning and pressing facilities, and "Country Cleaners," which was simply a retail outlet where no cleaning operations were conducted; (5) the papers prepared and distributed to the parties before the closing identified the seller of the property as the plaintiff, but at the closing, it was realized that the businesses were not held by the CT Page 6249 plaintiff, but by her deceased husband; (6) the sale and purchase agreement represented that the seller of the dry cleaning business was in compliance with all governmental laws and regulations imposed on dry cleaner owners; (7) the papers prepared for the closing did not include a "negative declaration" as required by General Statutes § 22a-134; (8) six to eight months after the closing, business at "Magic Touch" had declined and the defendant decided to sell the business; (9) in September, 1989, the defendant spoke with a potential purchaser who inquired about a declaration from the Department of Environmental Protection; (10)
the defendant investigated the matter and was advised by state and municipal employees of the procedure to test the soil for contamination; (11) the defendant failed to make the December, 1989 payment on the note; (12) from December, 1989 to May, 1990, the defendant removed the equipment and supplies from "Magic Touch"; (13) after talking to the defendant about his desire to resell the premises, the plaintiff consulted an attorney who prepared a negative declaration form to submit to the Department of Environmental Protection; (14) the defendant refused to sign and return the form so the plaintiff could file it with the Department of Environmental Protection; (15) in January, 1991, the plaintiff declared the note in default and accelerated payments; (16) the defendant received some information that cleaning waste had been dumped on the site of "Magic Touch" and after commencement of the plaintiff's action, had soil tests taken at a cost of approximately $800; and (17) neither the individual who took the test nor her employer was produced at trial for testimony.
Based upon his factual findings, the referee concluded, inter alia, that: (1) the plaintiff had proved the allegations of her complaint that the defendant defaulted in payments on the promissory note; (2) the defendant breached the covenants made part of the promissory note and the security agreement; (3) the plaintiff violated General Statutes §§ 22a-134(a) and (b), but such violation was innocent and not done knowingly; (4) by reason of the violation of § 22a-114(b), the defendant was entitled to recover provable damages from the plaintiff and the plaintiff was strictly liable, without regard to fault, for all clean-up and removal costs and for all direct and indirect damages; (5) no evidence was offered which would permit a finding that any clean-up or removal costs were incurred by defendant; (6) the $800 cost that the defendant incurred after being served with this action could be awarded as indirect damages since the plaintiff failed to produce a negative declaration prior to transfer, but the defendant did not request such reimbursement in his counterclaim; (7) there was no CT Page 6250 valid evidence offered which would support a finding that the plaintiff or anyone under her control dumped hazardous waste on the premises; (8) there was no valid evidence to permit a finding that the land in the area of "Magic Touch" cleaners contained hazardous chemicals; (9) there was insufficient evidence which would permit a finding of fraud committed by the plaintiff upon the defendant or that she misrepresented her assets to the defendant;(10) the plaintiff's failure to provide a negative declaration did not, by itself, bar her from enforcing the promissory note; (11)
the defendant did not prove that he abandoned the premises in advance of the end of the term by reason of hazardous water or because of the lack of a negative declaration; and (12) the defendant did not or could not tender a return of the business and the assets he purchased as a condition of rescission, so rescission could not be decreed.
On February 9, 1994, the defendant filed a motion to correct and supplement the referee's report, most of which was denied. On March 2, 1994, the defendant filed objections to the acceptance of the report. The defendant did not file exceptions to the report pursuant to Practice Book § 349. In his objections to the court's acceptance of the report, the defendant argues that the referee erred in: (1) not permitting the testimony of Robert Connor, an analyst for an environmental consulting firm, and the introduction into evidence of a certain report; (2) finding no legal defect in the plaintiff's not owning the assets sold to the defendant; (3)
finding no legal defect in the plaintiff's admitted breaches of contract; (4) holding the statutory requirement, of a negative declaration to be a damages recovery statute rather than the basis for a breach of contract; and (5) holding that the plaintiff was entitled to $24,148.00 in attorney's fees.
I. STANDARD OF REVIEW
"The attorney trial referee sits only as a fact finder."National Elevator Industry Pension, Welfare Educ. Fund v.Scrivani, 31 Conn. App. 728, 733, (1993). "[T]he trial court has the power to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee."Dills v. Enfield, 210 Conn. 705, 713 (1989). The trial court does not have authority to retry the case, and may "not find additional facts or reject others `unless a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear.'" Id., 714, quoting Practice Book CT Page 6251 § 439.
If a referee fails to correct a report as requested, the moving party may file exceptions seeking correction of the report by the court within ten days after the decision on the motion to correct has been filed. When a party fails to file an exception pursuant to Practice Book § 439, the party waives the right to attack the subordinate factual findings in the ATR's report. Id. In such a case, a court should not review issues of fact.
II. Whether the Referee erred in not permitting Connor's testimonyand the introduction of a certain report.
According to the defendant, he hired Eastern Analytical Services, Inc. ["EAS"] to test the soil behind one of the dry cleaning businesses, and a report, dated May 31, 1991, was prepared showing the results of this analysis. The defendant claims that since the report by itself was inadmissible hearsay, he attempted to call Connor, an agent of EAS, to "act as a conduit for the introduction of the report." (Defendant's Objections to Acceptance of the Report, dated March 2, 1994, p. 2) The defendant argues that the report, with Connor present, was a business records exception to the hearsay rule and that the referee effectively deprived the defendant of a critical defense by not allowing the report to be marked as a full exhibit and by not allowing Connor to testify.
The portion of the transcript submitted by the defendant in support of his objection indicates that the plaintiff objected when Connor was first called as a witness on the grounds that Connor was an expert who was never disclosed pursuant to the P.B. § 220. (Transcript, p. 27). The defendant represented that Connor was not being called as an expert, so the questioning continued, at which time Connor said that he had prepared the report, but did not do the actual analysis of the soil. (Transcript, p. 29) The plaintiff again objected on relevancy grounds arguing that the report without expert testimony was irrelevant because its contents were not within the general knowledge of an ordinary person or trial judge. (Transcript, p. 35) The referee overruled the plaintiff's objection and permitted the defendant to attempt to lay a foundation for the report's admission. (Transcript, p. 40) Connor indicated that a laboratory in New York performed the soil analysis and Connor then received the laboratory results and used those numbers to prepare his report. (Transcript, p. 41) The report that Connor received from the laboratory in New York, the report that Connor prepared for the defendant and a letter from Connor to the defendant were CT Page 6252 marked for identification. (Transcript, pp. 41-44) The referee inquired about, and the defendant attempted to show, the relevance of the three documents. (Transcript, pp. 44-46) The defendant then attempted to introduce these documents as full exhibits and the plaintiff objected. (Transcript, p. 44) After noting that the test was done four months after the defendant stopped paying on the note and finding that Connor had "little involvement" in the report's preparation since he was in an office or laboratory and simply "simulated other information and rechurned and reprocessed it," the referee sustained the objection and refused to allow the documents as full exhibits. (Transcript, pp. 48-49)
As noted above, the defendant claims that the report fell within the business records exception to the hearsay rule. General Statutes § 52-180 requires that evidence proffered under the business records exception to the hearsay rule satisfy three requirements: (1) that the record was made in the regular course of business; (2) that it was in the regular course of business to make the writing; and (3) that the writing was made at the time of the transaction or occurrence or within a reasonable time thereafter. State v. Scott, 31 Conn. App. 660, 665 (1993), quoting General Statutes § 52-180; River Dock Pile, Inc. v. O GIndustries, Inc., 219 Conn. 787, 793-94 (1991). "Section 52-180
should be liberally construed, and review is limited to determining whether the trial court abused its discretion in admitting a document under that section." State v. Lawler, 30 Conn. App. 827,832 (1993).
"[I]t is not necessary that the record sought to be admitted was made by [the witness who is testifying] or even that the witness have been employed by the business at the time the record was made." River Dock Pile, Inc. v. O G Industries, Inc., supra,219 Conn. 794. "Once [the requirements in § 52-180] have been met by the party seeking to introduce the record, however, it does not necessarily follow that the record itself is generally admissible, nor does it mean that everything in it is required to be admitted into evidence." Id. The information contained in such a record must be relevant to the issues being tried and it must be based upon the "`entrant's own observation or on information of others whose business duty it was to transmit it to the entrant.'" (Citation omitted.) Id.
As a threshold matter, a review of the transcript indicates that the defendant did not make the claim at trial that the report at issue fell into the business records exception. "The witness CT Page 6253 whose testimony provides the foundation for the admission of a business record must testify to the three statutory requirements . . . ." River Dock Pile, Inc. v. O G Industries, supra,219 Conn. 794. It is submitted that although Connor testified that it was common practice at his company to have outside laboratories perform the soil analysis, he did not testify as to the other statutory requirements.
Based upon the testimony before him the referee found several problems with the documents. The soil analysis was done in May, 1991. The property was transferred to the defendant in 1988. The referee found that the defendant continued the dry cleaning operations for a period of time before deciding to sell the business. The defendant stopped payment on the note in December, 1990, the plaintiff accelerated payment in January, 1991, and this action was filed in March, 1991. The referee pointed out at trial that the soil analysis was not done until four months after the defendant had stopped paying on the note. Thus, the referee found that the report lacked relevance. For the foregoing reasons this objection is overruled.
III. Whether the Referee should have found that the plaintifflacked the capacity to sell the dry cleaning business to thedefendant.
The defendant argues that the plaintiff did not own the dry cleaning business that she purported to sell. The defendant claims that no evidence was introduced by plaintiff that she was executrix of her deceased husband's will, or that she was empowered to sell estate assets.
In paragraph fifteen and sixteen of his report, the referee made the following findings:
15. The papers prepared . . . and distributed to the parties before closing identified the seller as Vona Limone; but, at the closing it was realized that the businesses were not held by Vona Limone, but by her husband during his lifetime.
16. The defendant requested that Mrs. Limone sign on behalf of the estate, she obliged and signed papers requested on behalf of the seller as "Vona Limone. Executrix of Estate of Pasqual M. Limone."
Except for this refinement, the parties did not distinguish CT Page 6254 Vona Limone individually from the estate.
The defendant requested a correction to the finding that "defendant requested that Mrs. Limone sign on behalf of the estate," which was denied. (Decision of ATR Re Motion to Correct, p. 2.) Since the defendant did not file exceptions to the above findings of fact pursuant to Practice Book § 439, he has waived his right to attack such factual finding.
The record reveals that the defendant failed to object to the plaintiff's actions on behalf of the estate at the closing or at any time during the trial. Our supreme court "has criticized the practice whereby an attorney, cognizant of circumstances giving rise to an objection before or during trial, waits until after an unfavorable judgment to raise the issue." Fiddleman v. Redmon,31 Conn. App. 201, 213 (1993). The second objection is overruled.
IV. Whether the referee erred in finding that the defendantsuffered no damages as a result of the plaintiff's breach ofcontract and failure to comply with General Statutes § 22-134.
The defendant complains that the referee found that plaintiff breached the representation of the sales contract that stated that the seller was in compliance with all governmental laws and regulations imposed upon owners of dry cleaning businesses, but failed to give such breach legal effect. The defendant argues that the referee's holding that the defendant may sue for damages but that the contract of sale could not be vitiated, "turns the statute on its head." The defendant cites no law in support of this position.
"General Statutes § 22a-134 through 22a-134d were enacted to protect purchasers of property from being liable for the subsequent discovery of hazardous waste on the property by requiring the transferor of property to submit a formal declaration that the property is free of pollution." Diamond v. Marcinek, 27 Conn. App. 353,358 (1992), rev'd on other grounds, 226 Conn. 737, (1993) Section 22a-134b provides that "[f]ailure of the transferor to comply with any of the provisions of sections 22a-134 to 22a-134d, inclusive, entitles the transferee to recover damages from the transferor, and renders the transferor of the establishment strictly liable, without regard to fault, for all cleanup and removal costs and for all direct and indirect damages." Holly HillHoldings v. Lowman, 30 Conn. App. 204, 219-209 n. 21 (1993). "[A] violation of General Statutes § 22a-134b could give rise to a CT Page 6255 private cause of action by a transferee against a transferor." Id., 206 n. 3 "[A] property owner may be liable for environmental cleanup cost, regardless of whether the owner created the hazard."Diamond v. Marcinek, 226 Conn. 737, 747 (1993). "In light of the responsibility that the environmental regulations place on landowners, it is essential that a potential owner be given notice of known environmental hazards." Id.
As noted above, the referee found that the plaintiff violated §§ 22a-134(a) and (b) by failing to submit a negative declaration and concluded that although this violation was innocent, the plaintiff was strictly liable for clean-up and removal costs and for all direct and indirect damages. The defendant contends that direct and indirect damages consist of the payments which he previously made to the plaintiff for the business, losses suffered by the closure of the dry cleaning business, losses occasioned by the defendant's inability to sell the business, etc. An attack on the referee's failure to award damages for these constitutes an attack on the referee's factual findings. As previously stated, since the defendant has failed to file exceptions under P.B. § 439 he has waived his right to attack the factual findings.
The referee found that the defendant's two counter-claims 1) sought recovery of all monies paid to the plaintiff, and 2) sought indemnity from liability to "third parties" which arise as a result of the plaintiff's conduct.
The referee found that no evidence was offered which would permit a finding that any cleanup or removal costs were incurred by the defendant. He further found that the only evidence of indirect damages was $800 for the soil tests for which the defendant has made no claim.
The referee also found that although the plaintiff was strictly liable for damages, the failure to provide a negative declaration did not bar her from enforcing the promissory note. Notwithstanding that Connecticut courts have held that the environmental statutes express a strong public policy and that § 22a-134 provides a transferee with an independent action for damages; Holly Hill Holdings v. Lowman, supra, 30 Conn. App. 206
n. 3; Diamond v. Marcinek, supra, 226 Conn. 747; research has revealed no case law which supports the defendant's argument that the failure to comply with § 22a-134 vitiates a contract, nor has the defendant provided the court with any such authorities. CT Page 6256
Applying the express language of § 22a-134b the referee found that the defendant was entitled to recover damages, had such damages been proved. "It is axiomatic that the burden of proving damages is on the party claiming them." Expressway Associates IIv. Friendly ice Cream Corp. of Connecticut, 218 Conn. 474, 476
(1991). "Damages `are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainly.'" (Citation omitted.) Id., 477.
The referee found that in the present case, the evidence did not afford a sufficient basis and recommended judgment accordingly.
The third and fourth objections to the referee's report are overruled.
VI. ATTORNEYS FEES
The defendant has objected to the award of attorneys fees claiming that they are excessive. The promissory note entitles the plaintiff to recover "reasonable attorneys fees." Our cases require an evidentiary showing of reasonableness where recovery is sought under a contract clause which provides for "reasonable attorneys fees." Appliances Inc. v. Yost, 186 Conn. 673, 680
(1982). At oral argument the defendant waived his right to an evidentiary hearing and instead asked the court to determine reasonableness from the plaintiff's affidavit of attorneys fees. The court is in no position to do so intelligently. An evidentiary hearing before the referee is necessary to test the defendant's objections. Accordingly, the case is remanded to the referee with direction to conduct an evidentiary hearing concerning the reasonableness of the attorney's fees and to issue a supplemental report thereon. The report of the referee is accepted and approved in all other respects.
MOTTOLESE, J. CT Page 6257