[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the plaintiffs, Edward and Marlis Jacobowitz, from a June 20, 2000 decision of the defendant, Department of Public Health ("the department"), imposing civil penalties and other directives upon the plaintiffs for failing to comply with water quality testing requirements for two wells owned and operated by the plaintiffs at a mobile home park in Montville. The plaintiffs' appeal is authorized by General Statutes §§ 25-32e(f) and 4-183 of the Uniform Administrative Procedure Act ("UAPA").
On February 15, 2000, the department issued five orders to the plaintiffs due to their violations of § 19-13-B102 et seq. of the Regulations of Connecticut State Agencies containing contingent civil penalties and ordering the following testing[1] of two wells for the period of October 1, 1999 through December 31, 1999: 1) bacteriological and physical parameter testing; 2) nitrate and nitrite testing; 3) pesticide, herbicide, and PCB testing; 4) organic chemical testing; and 5) gross alpha testing. (Return of Record ("ROR"), Volume I, Decision, p. 2.) The plaintiffs, pursuant to General Statutes § 25-32e(e), submitted a request to the department for a hearing.
The hearing was held on May 17, 2000 and the hearing officer made the following findings of fact:
 1. Appellants own and operate Stony Brook, a mobile home park, which has two wells ("the wells") identified by the Department as Systems 1 and 2, located at 311 and 341 Fitch Hill Road, respectfully, in Montville, Connecticut. . . .
 2. The wells are located on two contiguous parcels, serve two different areas of one mobile home park, and constitute one water system. . . .
 3. System 1 serves one single family dwelling and nine trailers, although trailer no. 2 is not currently used as a dwelling; System 2 serves one single family dwelling and seven trailers. . . .
 4. Stony Brook serves twenty-five or more individuals or persons, has fifteen or more service connections, and is a public and/or community water system. . . .
CT Page 12354
 5. Appellant Marlis Jacobowitz was not credible when she testified regarding how many persons were served by Stony Brook. . . .
 6. Ramon Esponda was credible when he testified regarding how many persons were served by Stony Brook. . . .
 7. Appellants failed to submit the following for Stony Brook's two wells, known as Systems 1 and 2: (1) bacteriological and physical parameter test results for the inclusive periods of October 1, 1999 through December 31, 1999; (2) nitrate and nitrite test results for the period of October 1, 1999 through December 31, 1999; (3) pesticides, herbicides and PCB (Phase II V) test results for the period of October 1, 1999 through December 31, 1999; (4) organic chemical test results for the period of October 1, 1999 through December 31, 1999; and (5) gross alpha test results for the period of October 1, 1999 through December 31, 1999. . . .
 8. On February 15, 2000, the Department issued the Orders to appellants. . . .
9. Appellants have not complied with the Orders.
(ROR, Volume I, Decision, pp. 3, 4.)
Based upon these findings, the hearing officer concluded that the department had properly imposed its orders upon the plaintiff. The sole claim raised by the plaintiffs was that the wells did not qualify' as either a public or a community water system, because Stony Brook consisted of two separate water systems. The hearing officer found that the plaintiffs "have consistently operated Stony Brook as one mobile home park with one water system since its inception." (ROR, Volume I, p. 6.) Therefore, the department's orders were to be followed, or the plaintiffs would be subject to appropriate enforcement and penalties. The plaintiffs have appealed from this decision.[2]
"Judicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act [General Statutes § 4-166 et seq. (UAPA)] . . . and the scope of that review is very restricted. . . . With regard to questions of fact, it is neither the function of the CT Page 12355 trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.)MacDermid, Inc. v. Dept. of Environmental Protection, 257 Conn. 128, 136
(2001).
"Even as to questions of law, the court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.) Id., 137.
"Moreover, an agency's interpretation of its own regulations is entitled to deference. It is the well established practice of this court to accord great deference to the construction given a statute by the agency charged with its enforcement. . . . This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations. . . . When an agency has expertise in a given area and a history of determining factual and legal questions similar to those at issue, its interpretation is granted deference by the courts. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.)MacDermid, Inc. v. Dept. of Environmental Protection, supra,257 Conn. 138-39: see also Carpenter v. Freedom of InformationCommission, 59 Conn. App. 20, 23, cert. denied, 254 Conn. 933 (2000) (great deference to construction given of statute by agency charged with its enforcement); Diamond v. Marcinek, 226 Conn. 737, 748 (1993) (agency's interpretation of regulations within its jurisdiction entitled to judicial deference).
On appeal, the plaintiffs do not challenge the conclusion of the hearing officer that "Stony Brook consists of one mobile home park on two contiguous parcels with a single water system operating two wells, which are designed to serve two single family dwellings and sixteen trailers. . . . Stony Brook supplies water to fifteen or more consumers and/or twenty-five or more persons and has fifteen or more service CT Page 12356 connections. . . ." (ROR, Volume I, p. 5.) This conclusion is supported by substantial evidence. (ROR, Volume I, p. 13; Volume II, pp. 22,31-32.)[3]
The plaintiffs instead insist that General Statutes § 25-32a, defining "water company," and § 16-262m-8 (a)(6) of the Regulations of Connecticut State Agencies, defining water "source," indicate that the department should look to the location of the water that creates the supply, not the number of people served by an owner. General Statutes § 25-32a and § 16-262m-8 (a)(6) of the Regulations of Connecticut State Agencies refer to "any well" and "any Department of Health Services approved well"; the language used is in the singular.[4] Hence, each well, as a separate source, would be regulated separately, and would not be combined to reach fifteen connections or twenty-five customers.
The department states that "water company" as defined in General Statutes § 25-32a means any individual who owns any well "that supplies water to two or more consumers or to twenty-five or more persons on a regular basis provided if any individual . . . owns . . . more than one such system . . . the number of consumers or persons supplied by all such systems so controlled shall be considered as owned by one company. . . ."[5] (Emphasis added.) The department states that the statute's proviso clause on ownership[6] was added to preclude "the artificial segregation of a water system in order to avoid the public health regulatory requirements. . . ." (Defendant's Brief, p. 6); see also Commission on Hospitals Health Care v. Lakoff,214 Conn. 321, 332 (1990) ("Such `Balkanization' of inherently unitary health services can only chip away at the commission's authority in this vitally important area of service to Connecticut's citizens.")
The legislative history of the proviso supports this interpretation. It was added to Senate Bill No. 837 as an amendment on the floor of the House of Representatives and later passed as part of Public Acts 1975, No.75-70. Explaining the amendment, Representative Camp stated: "As the law was written several years ago, it was written as the file copy now appears. Under that language, the PUC had interpreted a situation where you have a single company owning more than one system, that is 3 or 4 wells. The company could avoid regulation by considering the number of customers served by any one well, that being the system. I think their interpretation was in error but at any rate they let a company that was in Ridgefield and I suspect there're others throughout the State, escape regulation. The purpose of this amendment is to make clear that if one company owns a number of systems, you take the entire number of customers into account in determining the number of 25." 18 H.R.Proc., Pt. 3, 1975 Sess., pp. 1380-81. CT Page 12357
The court concludes that the department's interpretation is preferable, in holding that the agency should look to the common owner, not the source of supply. Where a statute or regulation is capable of two constructions, the court should select the one that is "rational and effective" in accomplishing the legislative objective, not the one which is the more difficult or would frustrate the legislative purpose. Statev. Burns, 236 Conn. 18, 23 (1996); State v. Tudisca, 62 Conn. App. 796,800 (2001).
The plaintiffs' next claim relates to the orders issued by the department requiring the plaintiffs to test their wells between October and December, 1999. The plaintiffs contend that these orders were improperly issued because there was no evidence in the record as of the October to December period on the population being served by the water company. This contention is in error. On July 28, 1999, a representative of the department made a survey of the number of persons served. (ROR, Volume I, p. 13.) On August 23, 1999, the department sent a letter to the plaintiffs concluding that it had jurisdiction of Stony Brook's wells and setting forth a testing schedule. (ROR, Volume I, p. 14.) In rejecting a settlement by an attorney for the plaintiffs, the department reminded the attorney of the testing requirement on October 5, 1999. (ROR, Volume I, p. 20.) The five notices of violation, ordering the testing and setting forth prospective penalties, were dated February 15, 2000. (ROR, Volume I, pp. 22-37.) The orders were followed by the hearing request. (ROR, Volume I, p. 38.)
The statute allowing for the issuance of the orders by the department states at the beginning that it may set a civil penalty "upon review, investigation or inspection. . . ." General Statutes § 25-32 (e)(a). The section further provides that "[i]f the commissioner has reason to believe that a violation has occurred, the commissioner may impose a penalty if compliance is not achieved by a specified date. . . ." General Statutes § 25-32 (e)(c). Under these sections, as was done here, the population survey should take place before the orders issue for failure to carry out the testing, and not during the test period. This interpretation of the portions of the statute respects the meaning of the statute as written. State v. State Employees' Review Board, 239 Conn. 638,654 (1977). "We presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions." (Citations omitted.) Hallv. Gilbert Bennett Mfg. Co., 241 Conn. 282, 303 (1997).
The plaintiffs claim that the department has improperly changed its position on whether it has jurisdiction over the Stony Brook wells. The record shows that after some controversy in the late 1980's, (ROR, Volume CT Page 12358 II, p. 60), the Stony Brook wells were, in 1993, officially classified as "under 25" wells and not subject to the department regulation. In 1999, because of a complaint relating to the adequacy of supply, a department representative visited the premises and reported to his superior. The matter was taken up with the attorney general's office and a decision was made to regulate the wells. Notice was given to the plaintiffs. (ROR, Volume I, pp. 13-14.)
The plaintiffs argue that neither the statutes nor regulations have changed since 1993 and the department's new interpretation is arbitrary and illegal. Our Supreme Court has stated that the "mere filing of a decision [by an agency] confers nothing in the nature of a vested right. . . ." (Citations omitted.) Shea v. State Employees' RetirementCommission, 170 Conn. 610, 615 (1976). "An administrative agency may be permitted to reverse itself . . . where there has been a change in conditions or that other considerations materially affecting the merits of the subject matter had intervened and no vested rights had arisen." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 616.
Here, the department's new policy was not taken because of statutory change, but after reconsidering its position and discussing the matter with its counsel. This should be sufficient to allow for a change. As Judge Satter stated in Connecticut Conservation Association, Inc. v.Commissioner of Environmental Protection, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 135268 (July 12, 1978, Satter, J.):
 Finality as a principle must be cautiously applied, insofar as it precludes a government authority from reversing itself or correcting a previous mistaken decision. Certainly any legislative body has full freedom to enact a measure previously rejected, or to repeal one previously passed. Courts, which are deemed to be the most deliberative and reflective branch of government, have the power to reverse themselves. Why should not administrative agencies have a similar right to reach a conclusion different than a previous one without a showing of change of circumstances? To require of them consistency for its own sake unduly invades the power of the executive department to make determinations and to govern, in violation of the fundamental constitutional principle of separation of powers.
Nor do the plaintiffs claim any changed position because of the CT Page 12359 inaction by the department from 1993 to 1999. The only claim of prejudice is that now that the department has decided to take action, the plaintiffs will have to expend funds to satisfy' the orders issued pursuant to § 25-32e(c). (Plaintiffs' Memorandum of Law in Support of Appeal, p. 11.) "Such inaction, however, provides no basis for support of a claim of equitable estoppel. An administrative agency, charged with the protection of the public interest, is certainly not precluded from taking appropriate action to that end because of mistaken action on its part in the past. . . . Nor can the principles of equitable estoppel be applied to deprive the public of the protection of a statute because of mistaken action or lack of action on the part of public officials. . . ." (Citations omitted; internal quotation marks omitted.) William RaveisReal Estate, Inc. v. Commissioner of Revenue Services, 44 Conn. Sup. 1,7, 8 (1995), aff'd, 43 Conn. App. 744 (1996).
As a final point, the plaintiffs raised at oral argument the claim that the hearing officer erred in not deciding whether, as required by General Statutes § 25-32a, the plaintiffs supplied water "on a regular basis" to the twenty-five customers. This contention cannot be considered by the court as it was not raised by the plaintiffs during the administrative hearing. Burnham v. Administrator, 184 Conn. 317, 323 (1981) (court cannot set aside agency determination when ground not presented at hearing). In addition, even if the plaintiffs had preserved this issue and raised it in their complaint, they have abandoned it by not briefing it at all. "Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . ." (Citation omitted.) Merchant v. State Ethics Commission,53 Conn. App. 808, 818 (1999).
For the above stated reasons, the appeal is dismissed.
Henry S. Cohn, Judge