## EDWARD R. TRZCINSKI *v.* JANET RICHEY ET AL.
### (10926)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued March 5—decision released June 7, 1983

*Herbert Watstein,* for the appellant (plaintiff).

*Elaine J. Draucunas,* with whom, on the brief, was *Snow Gene Munford,* for the appellees (defendants).

GRILLO, J. The plaintiff brought this action to recover for personal injuries sustained in a collision allegedly resulting from the negligent operation of a motor vehi-

cle by the defendant Janet Richey.[1] The defendants denied their negligence and raised the plaintiff's contributory negligence as a special defense. The jury returned a general verdict for the defendants. The plaintiff filed a motion to set aside the verdict, which the trial court, *D. Dorsey, J.,* denied. Accordingly, judgment was rendered for the defendants, from which judgment the plaintiff appeals.

The plaintiff presents the following issues on appeal: (1) Whether the trial court erred in its charge to the jury regarding proximate causation; (2) Whether the trial court erred in admitting the testimony of an expert witness in response to a hypothetical question; and (3) Whether the trial court erred in denying the motion to set aside the verdict.

The jury could reasonably have found the following facts: On November 11, 1977, at approximately 6 p.m., the plaintiff was driving his automobile in a northerly direction on Flanders Road in Southington. Flanders Road runs in a general north-south direction and is a main road. At the same time the defendant, Janet Richey, (hereinafter the defendant) was operating her automobile in an easterly direction on Pattonwood Drive, also in Southington. Pattonwood Drive runs in a general east-west direction and is a minor road. There is a stop sign at the easterly end of Pattonwood Drive, where it intersects Flanders Road in a "T" intersection.

Upon reaching this intersection, the defendant stopped at the stop sign, and subsequently executed a right turn in order to proceed along Flanders Road in a southerly direction. During the course of this turn, a collision occurred between the plaintiff's and the defendant's vehicles. The left front fender area of the

---

[1] The defendants included the automobile operator, Janet Richey, and the automobile owner, Robert J. Richey.

defendant's car struck the left side of the plaintiff's vehicle in the area of the driver's door, causing damage to both vehicles. At the time of the collision it was dark, clear and the roadways were dry. The posted speed limit on Flanders Road was twenty-five miles per hour.

The plaintiff testified that as he was proceeding along Flanders Road in the right or northbound lane, he first saw the defendant's vehicle coming out of Pattonwood Drive when he was approximately 150 feet from the intersection. He stated that he was travelling at approximately twenty-five miles per hour. As the gap between the vehicles lessened, he realized that the turning vehicle was encroaching on his side of the highway, and he attempted to "squeeze" to the right to avoid being hit. At no time prior to the accident did he apply his brakes.[2] The collision flung him to the right, away from the steering wheel, and when he reassumed his driving position he found his car partially over the center line in the southbound lane of Flanders Road and angling toward the side of the southbound lane. As the plaintiff looked up, he saw the headlights of another vehicle proceeding southbound and toward him on Flanders Road. To avoid a head-on collision with this vehicle, the plaintiff testified that he swerved further left onto a lawn, where the front end of his car struck a group of three trees prior to coming to a stop.

The defendant testified as follows: Upon coming to a stop at the stop sign, she looked right, (the direction from which the plaintiff's car was approaching) saw

[2] Question: "And could you tell the jury and the Court why you never applied your brakes, if you know?

Answer: "Well, the reason I didn't apply my brakes is because I had no conception of anybody coming on my side of the highway. I'm minding my own business going down the highway and this woman comes right—and hits me. I'm not expecting anything like that to happen, so I didn't apply the brakes, no."

nothing,[3] looked left, saw a car approximately four to five hundred feet away, and proceeded to execute her right turn. She estimated her speed at under five miles per hour. She was halfway into the turn, at a forty-five degree angle, when the collision occurred. She did not see the plaintiff's vehicle until impact, and denied encroaching upon the northbound lane of Flanders Road while making her turn into the southbound lane. Upon viewing the plaintiff's car proceed off the road and into the trees, after the collision the defendant estimated its speed as between forty and forty-five miles per hour.

An independent witness, the driver of the car proceeding south on Flanders Road which was north of the intersection at the time of the collision, viewed the entire incident. She testified that she saw the defendant's vehicle "creeping very slowly" onto Flanders Road, and she estimated that upon impact the defendant's car was a foot to a foot and one-half across the center line into the northbound lane. The witness was unable to estimate the speed of the plaintiff's vehicle at the trial, and did not remember estimating its speed to the investigators who contacted her after the accident. On cross-examination, however, in response to defense counsel's query concerning her statement, made to an investigator, that the plaintiff was travelling at forty-five miles per hour, the witness responded, "[i]f I said 45, then that's what I felt it was then, but I just don't recollect."

The defendant's son, a rear seat passenger in the defendant's vehicle at the time of the accident,[4] saw the plaintiff's car prior to impact and estimated its

---

[3] Because of a knoll on Flanders Road to the south of the intersection, the defendant estimated that when she looked right or in a southerly direction up Flanders Road she could see approximately 500 feet.

[4] At the time of the accident the defendant's son was sixteen years old.

speed as greater than thirty miles per hour and as an "excessive rate of speed." In his opinion his mother did not at any time while making her turn cross the center line of Flanders Road. On cross-examination, he admitted to signing a statement concerning the events of the accident which read " '[i]f [the defendant's] car was over the center line it wasn't by much.' "

The investigating police officer, who arrived at the scene shortly after the accident, testified that in his opinion the collision occurred in the northbound lane of Flanders Road. He reached this conclusion based on a patch of dirt, which the officer attributed to the collision. The patch was approximately five feet in length and in the area of the center line of Flanders Road. The majority of this dirt was in the northbound lane, although some of the dirt was in the southbound lane as well.

The final witness to testify at the trial was the defendant's expert, a consulting automotive engineer. Defense counsel, after showing the witness photographs of the parties' vehicles which revealed the damages to each car, proceeded to ask a hypothetical question. Instructing the witness to assume that the plaintiff's vehicle was proceeding north on Flanders Road, and that the defendant's vehicle was proceeding to make a right hand turn onto Flanders Road from Pattonwood Drive, and that the two cars came together somewhere on Flanders Road near the center line, which resulted in the damages to each vehicle as shown in the photographs, defense counsel asked the witness his opinion concerning the nature or character of the collision which occurred between the two automobiles. A series of objections by the plaintiff's counsel concerning an improper foundation for the hypothetical question followed, to which defense counsel responded by asking the witness to assume the additional factors which

formed the basis of the plaintiff's objections.[5] Ultimately, the court permitted the witness to respond to the question over counsel's objection.[6]

The expert witness testified that in his opinion the impact was "a side scraping action on the side of the [plaintiff's vehicle] across the left front fender tip end of the [defendant's vehicle]." He described the damage to the defendant's vehicle as "superficial," and characterized the side damage to the plaintiff's vehicle (discounting the damages applicable to the frontal collision with the trees) as resulting from the kind of impact that would cause "the car to rock on its suspension just away from that side. It would not cause the wheels to lose tracks with the road. There's not that much energy in the collision to cause it to go out of control." Moreover, in the expert's opinion, upon impact

---

[5] The plaintiff's counsel first objected regarding the lack of information concerning the relative speed of each vehicle, and their respective weights. Defense counsel subsequently instructed the witness to assume that the defendant's car was travelling at approximately five miles per hour, and that the plaintiff's vehicle was travelling between twenty-five and forty-five miles per hour. The witness was then asked whether he knew the approximate weights of the types of cars (make, model and year) involved in the collision. He responded affirmatively, and was instructed to take these factors into consideration.

In response to subsequent objections by the plaintiff's counsel concerning the number of occupants in each vehicle, their respective weights and the weather conditions at the time of the accident, defense counsel instructed the witness to make further assumptions on these points.

[6] Plaintiff's Counsel: "Well I object, your Honor, for all the reasons I've stated."

The Court: "Do you want to voir dire the witness?"

Plaintiff's Counsel: "Not really, your Honor. I just don't feel that at this particular point, in view of the testimony and the information that he's been provided with, that he's really in a position to give an answer that would have any validity in court here today."

The Court: "Well, ultimately it's the jury's determination as to the weight they would give even an expert's opinion. However, under the circumstances I'm going to allow him to answer."

the plaintiff would move toward the point of collision, in this case to his left against the window or driver's door of the vehicle.

On appeal, the plaintiff first assigns as error the trial court's charge to the jury regarding proximate causation.[7] In presenting this argument, the defendant

[7] In pertinent part, the court charged the jury as follows:

"I've given you a statement as to the law concerning negligence. It's the doing of something which a reasonably prudent person would not have done under like circumstances, insofar as I have referred to common law allegations of negligence, or it may be an omission to do that which a reasonably prudent person would have done under similar circumstances. In other words, the law requires that operators of motor vehicles use reasonable care under all of the circumstances. Reasonable care is the care of a reasonably prudent person. I emphasize the phrase 'reasonably prudent person.' Care must be proportionate to the danger. You inquire what is the conduct of the parties and what were the circumstances and what ought the defendant as a reasonably prudent person, or the plaintiff as a reasonably prudent person, to have done under the circumstances. The ultimate test of the existence of a duty to use reasonable care is to be found in the foreseeability that harm may result if that care is not exercised. By that it is not meant that one charged with negligence must be found actually to have foreseen the probability, or that the particular injury resulted was foreseeable, but the test you should apply is would the ordinary reasonably prudent man in the position of the defendant or the plaintiff, knowing what he knew or should have known, anticipate that harm of the same general nature as that actually suffered was likely to happen. And you would apply that standard to the conduct of both parties in this particular situation. Now, in addition to that common law concept of negligence, I have indicated to you there are so-called statutory negligence which consists of a violation of any statute which prescribed a rule of conduct to be followed by a person under the circumstances. And I'm going to go over each of the allegations of negligence with you in the complaint and tell you whether this is to be measured by the statute itself or whether it's to be measured by a reasonably prudent man, the conduct of a reasonably prudent man under those circumstances. Because if a statute says you must do something or not do something, if you do it and you're not supposed to do it, or you don't do what you're supposed to do, it is negligence, but that is only part of the equation of fault as I explained to you. It's not enough just to find negligence, so-called negligence in the air. You must find that that negligence was a substantial factor in producing the injuries and losses claimed. Causation is part of it. A person could fail to stop at a stop sign, for instance, go through the stop sign and make a turn, be completely in

relies primarily on *Mahoney* v. *Beatman,* 110 Conn. 184, 147 A. 762 (1929), asserting that the trial court's charge overrules the precedent established in that case. Citing *Mahoney,* the plaintiff contends that if the jury were to conclude that the plaintiff was in the northbound lane at all times, and that the defendant encroached into the northbound lane, thereby violating General Statutes

the wrong lane and then get hit by somebody else. That would have no causal relationship to his damage. That's what I mean. Although it would be negligence to fail to stop at a stop sign, under certain circumstances it's not necessarily true that that negligence would produce an injury or a loss. You'd have to analyze the situation to see what actually caused the injury or loss. . . . Now, turning to these items of negligence. The question you have to make a determination on is did the—and if you are looking at the complaint—did the defendant drive her vehicle into the northbound lane in violation of the Connecticut General Statutes? And there is a statute with reference to that which I will read to you, and it's known as driving in the right-hand lane. We all know about it. If we drive a car you are supposed to drive in the right-hand lane. . . . And this statute requires that a vehicle be driven in the right-hand lane except under those circumstances, and if you find that Mrs. Richey drove her vehicle in the left-hand lane, into the northbound lane, in violation of that statute, then you may find that she's negligent. If you find that she's negligent, that is not simply enough. You must make a determination from that point whether or not her negligence was a substantial factor in producing the injuries and losses complained of by the plaintiff. Now, the same thing is true on the special defense. The special defense claims that the plaintiff drove his vehicle in the southbound lane in violation and failed to operate his vehicle in the proper lane. It's for you to make a factual determination from the evidence that you heard what actually happened here and whether or not there was a violation of the statute. If you find a violation of the statute, then, of course, it is negligence. Now, the negligence allegations, and it applies to both of them, excessive rate of speed is in view of the width, traffic, use and condition of the highway at said point and in view of the weather and visibility. It's for you to make a determination what a reasonably prudent man—what rate of speed a reasonably prudent person under those circumstances and subject to the width, traffic, use of the highway at that point would have used, both with regard to the plaintiff and the defendant. If you find that either the plaintiff or the defendant violated that conduct that a reasonably prudent man would have used under those circumstances, you may find that either the plaintiff or the defendant were negligent and subject to the same reservation I made before about whether or not that negligence is a substantial factor in producing the injuries or losses. . . .

§ 14-230,[8] and there was a collision, that the speed of the plaintiff's vehicle could not be a substantial factor in causing the accident. It is his position that the court's failure so to charge constitutes error. We do not agree.

If you find that the defendant's conduct did not measure up, then you could find that the defendant was negligent. Or if you found that the plaintiff's conduct did not measure up to the conduct of a reasonably prudent operator or in what a reasonably prudent operator would have done with regard to his brakes, then you may find that the plaintiff is contributorily negligent and again subject to that ever present reservation that I mentioned. Negligence alone is only one of the findings that you have to make. You have to go on and make a determination whether that negligence was a substantial factor in producing the injuries and losses, the event itself, the collision, and ultimately the injuries and losses, or whether it was a substantial factor, and you can make a determination that the plaintiff was contributorily negligent and that this negligence contributed to and was a substantial factor. If it was an insubstantial factor—I keep using that term substantial—if it's a trifling matter, you don't consider it. It has to be a substantial factor . . . . I want to again emphasize that insofar as the plaintiff is concerned, he doesn't have to prove by a fair preponderance of the evidence that the defendant was in default on all of these allegations. One is sufficient if that one violation of either the statute or the common law is proven by a fair preponderance of the evidence and that that negligence is a substantial factor in producing his injuries and loss, he can recover. The same thing is true of the defendant. He is not required to prove all of his allegations. If he proves one and he satisfied the substantial factor test, that's sufficient. Subject, of course, to what I have told you about our comparative negligence statute . . . . I'm going to conclude pretty much by summing up, explaining that this is a negligence case and that for a plaintiff to prevail in a negligence case he must prove that the defendant was negligent in at least one of the ways that he specifies in his complaint. He must further prove that that negligence was a substantial factor in producing his injuries and losses. Now that necessarily involves a consideration on your part when you are considering causation the special defense which has been brought in this case. . . ."

[8] General Statutes § 14-230, entitled "Driving in right hand lane," states: "Upon all highways, each vehicle shall be driven upon the right, except (1) when overtaking and passing another vehicle proceeding in the same direction, (2) when overtaking and passing pedestrians, parked vehicles, animals or obstructions on the right side of the highway, (3) when the right side of a highway is closed to traffic while under construction or repair, (4) on a highway divided into three or more marked lanes for traffic, or (5) on a highway designated and signposted for one-way traffic. Any vehicle proceeding at less than the normal speed of traffic shall be driven in

In *Mahoney* v. *Beatman,* the plaintiff was driving at an unreasonable rate of speed when the defendant's car, traveling in the opposite direction, swerved onto the wrong side of the road, resulting in a collision between the two vehicles. Id., 186–87. The trial court, as the trier of fact, specifically found that the collision was caused solely by the negligence of the defendant, a conclusion unchallenged upon appeal. Id., 187–88. At issue before this court was whether, after the collision, the unreasonable speed of the plaintiff constituted an "intervening agency" sufficient to exhaust the negligent act of the defendant and thus become, itself, the substantial factor causing the plaintiff's injuries. Id., 198–99. Under the circumstances presented, we held that the plaintiff's speed did not constitute such a cause. "The negligent act to which the plaintiff has not materially contributed, is responsible for all the injurious consequences and is a substantial factor in producing them. These consequences follow in true causal relation until the negligent act has become spent or exhausted, or some new intervening agency has come into existence after the negligent act and diverted the results of the negligent act to 'some new and different end.'" Id., 199.

Although the defendant offers considerable authority in an effort to attack the continuing validity of *Mahoney,* under the circumstances of this case we need not reach this issue. "In considering *Mahoney* v. *Beatman,* supra, it must be remembered that in that case the court was the trier of facts and that the discussion concerning the substantial factor test was predicated on the facts found." *Busko* v. *DeFilippo,* 162 Conn. 462,

---

the right-hand lane available for traffic, or as close as practicable to the right-hand curb or edge of the highway, except when overtaking and passing another vehicle proceeding in the same direction or when preparing for a left turn at an intersection or into a private road or driveway. Violation of any provision of this section shall be an infraction."

466, 294 A.2d 510 (1972). The proposition for which *Mahoney* stands must be considered, therefore, within the factual four corners of that case. Unlike *Mahoney*, in this appeal we are confronted with the threshold factual questions of negligence, contributory negligence and proximate causation concerning the initial collision, and the trial court's charge relating thereto.

The issue of proximate causation is ordinarily a question of fact for the trier. *Tetro* v. *Stratford,* 189 Conn. 601, 605, 485 A.2d 5 (1983). "Conclusions of proximate cause are to be drawn by the jury and not by the court." *Fox* v. *Mason,* 189 Conn. 484, 489, 456 A.2d 1196 (1983). " 'It becomes a conclusion of law only when the mind of a fair and reasonable man could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact.' *Marley* v. *New England Transportation Co.,* 133 Conn. 586, 591, 53 A.2d 296 [1947] . . . ." *Busko* v. *DeFilippo,* supra. Likewise, the issues of negligence and contributory negligence are ordinarily ones of fact. See *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 331, 430 A.2d 1 (1980); *Salvatore* v. *Milicki,* 163 Conn. 275, 279, 303 A.2d 734 (1972).

The plaintiff's exception to the charge is predicated on his contention that should the jury find that the defendant encroached over the center line, any activity on the part of the plaintiff, provided he remained in the northbound lane, would constitute merely a "condition" and not a cause of the accident. Such an argument oversimplifies our law of negligence and proximate causation and ignores the myriad of factual circumstances under which these legal principles may be established. In the present case the defendant pleaded, by way of a special defense, excessive speed, failure to apply brakes and failure to keep a proper lookout.

Even if we assume, for the sake of argument, that the speed of the plaintiff should, as a matter of law, be considered a condition and not a cause, in light of the totality of circumstances in evidence, the plaintiff's requested charge would effectively usurp the function of the jury by precluding from their consideration evidence relating to the plaintiff's failure to maintain a proper lookout and his failure to apply brakes. This is not a case where the facts *require* a conclusion by the jury that the defendant's acts were the sole proximate cause of the plaintiff's injuries; *DePalma v. Cappella,* 157 Conn. 139, 141–42, 249 A.2d 235 (1968); nor can we conclude that the plaintiff's actions were so far removed from "the actual occurrence producing the injury that they become mere 'incidents of the operating cause.' " *Kinderavich v. Palmer,* 127 Conn. 85, 93, 15 A.2d 83 (1940). "This issue is 'so fundamentally one of fact and inference' that it should be left to the trier to determine if the question is open to a reasonable difference of opinion." *Miranti* v. *Brookside Shopping Center, Inc.,* 159 Conn. 24, 30, 266 A.2d 370 (1969).

"The court correctly charged that the violation of the statute, although negligence per se, had to be proven to be a substantial factor in causing the plaintiff's damages before [he] could recover." *Busko* v. *DeFilippo,* supra. On the basis of the subordinate facts recited above, it is readily apparent that reasonable minds could differ on the issues of negligence and causation. Whether the defendant encroached upon the northbound lane of Flanders Road while making her turn, and the speed of the plaintiff's vehicle, were both hotly contested issues of fact. The verdict was a general one. Unlike a case tried to the court, where a motion to articulate can be utilized to determine the reasons behind the court's decision, we can only "speculate" as to how the jury concluded. See *Fox* v. *Mason,* supra,

489–90. "Taking all this evidence into account the jury reasonably could have concluded either (1) that the defendant did not breach any statutory or common-law standard of care, or (2) that the defendant did breach a statutory or common-law standard of care but that that breach was not the proximate cause of the plaintiff's injuries"; *Jacobs* v. *Goodspeed,* 180 Conn. 415, 419, 429 A.2d 915 (1980); or (3) that while both parties were negligent, the negligence of the plaintiff exceeded the negligence of the defendant. General Statutes § 52-572h (a). The trial court did not err in its charge to the jury.[9]

The plaintiff's second assignment of error concerns the testimony of the defendant's expert witness. The plaintiff does not challenge the qualifications of the expert, but bases his argument on the witness' response to the hypothetical question offered by defense counsel. He avers that the hypothetical question contained unwarranted assumptions while omitting essential facts, and that therefore a proper foundation had not been established which would justify opinion testimony thereon. See *Stephanofsky* v. *Hill,* 136 Conn. 379, 383–85, 71 A.2d 560 (1950). Under the circumstances of the present case, we find this claim unpersuasive.

The determination of the admissibility of a hypothetical question rests within the sound discretion of the trial court. *Duley* v. *Plourde,* 170 Conn. 482, 488, 365 A.2d 1148 (1976). There is no requirement that the question contain all of the pertinent facts in evidence. *Gulia* v. *Ortowski,* 156 Conn. 40, 48, 238 A.2d 396

---

[9] Our conclusion with respect to the propriety of the charge should not, however, be construed as an implicit approval of the charge as a whole. Ordinarily, issues not raised in the trial court will not be considered on appeal. E.g., *DeLouise* v. *Clarke,* 180 Conn. 137, 140, 429 A.2d 839 (1980). Nor will we consider claims of error not pursued in the briefs. *State* v. *Nims,* 180 Conn. 589, 590, 430 A.2d 1306 (1980). Our conclusion extends, therefore, only to those issues properly before us.

(1968). The essential considerations include whether the question " 'presents the facts in such a manner that they bear a true and fair relationship to each other and to the whole evidence in the case . . . is not so worded as to be likely to mislead or confuse the jury, and is not so lacking in the essential facts as to be without value in the decision of the case.' " (Citations omitted.) *Healy* v. *White*, 173 Conn. 438, 447, 378 A.2d 540 (1977).

In the present case the record reveals that defense counsel proffered the hypothetical question in a manner consistent with the evidence previously presented. Moreover, in response to specific objections by the plaintiff's counsel, defense counsel added further assumptions which were in harmony with both the disputed and undisputed facts. See footnote 5, supra. Although the plaintiff underscores an omission concerning the plaintiff's attempt to "squeeze" to the right prior to the collision, and characterizes the statement that the plaintiff was traveling in a "generally northerly direction" as an "unwarranted assumption," we are not prepared to construe these factors as rendering the question "so lacking in material, relevant and essential facts"; *State* v. *Gaynor*, 182 Conn. 501, 509–10, 438 A.2d 479 (1980); as to render the question inadmissible. The court did not abuse its discretion in allowing an answer to the question.

Little need be said relative to the plaintiff's final claim that the trial court erred in refusing to set aside the verdict. "There is no demonstration on the record before us that the jury were swayed by prejudice, passion, mistake or corruption." *Fox* v. *Mason*, supra, 489. It is the province of the jury to determine the credibility of the witnesses and the weight to be accorded their testimony. *Kubeck* v. *Foremost Foods Co.*, 179 Conn. 486, 487, 427 A.2d 391 (1980). " 'Upon issues regard-

ing which, on the evidence, there is room for reasonable difference of opinion among fairminded men, the conclusion of a jury, if one at which honest men acting fairly and intelligently might arrive reasonably, must stand, even though the opinion of the trial court and this court be that a different result should have been reached.' " *Jacobs* v. *Goodspeed,* supra, 417.

As revealed by the conflicting evidence recited above, in the present case the issues of negligence and proximate causation were hotly contested questions of fact. The jury, in determining the facts and the reasonable inferences therefrom, could reasonably conclude as it did. See *State* v. *Wilson,* 178 Conn. 427, 434, 423 A.2d 72 (1979). The trial court did not abuse its discretion in refusing to set aside the verdict.

There is no error.

In this opinion the other judges concurred.