AMY JEANNE CONWAY *v.* TOWN OF WILTON ET AL.
(AC 13524)

Landau, Schaller and Spear, Js.

Submitted on briefs November 1, 1996—decision released April 29, 1997

*Ira B. Grudberg* and *David T. Grudberg* filed a brief for the appellant (plaintiff).

*Hugh W. Cuthbertson* and *Dana Shaw MacKinnon* filed a brief for the appellee (defendant Connecticut Association of Secondary Schools).

*Opinion*

SPEAR, J. This case, in which the plaintiff claims that she was injured while participating in a tennis tournament on municipally owned property, comes to us on remand from our Supreme Court. *Conway* v. *Wilton*, 238 Conn. 653, 680 A. 2d 242 (1996) (*Conway II*). The Supreme Court reversed our decision in *Conway* v. *Wilton*, 39 Conn. App. 280, 664 A.2d 327 (1995) (*Conway I*), in which we held that the trial court properly rendered summary judgment in favor of all of the defendants in light of *Manning* v. *Barenz*, 221 Conn. 256, 603 A.2d 399 (1992). In *Manning*, our Supreme Court determined that a municipality could be immune from

liability pursuant to the Recreational Land Use Act (act), General Statutes §§ 52-557f through 52-557h,[1] if it met the requirements of the act. Id.

---

[1] General Statutes § 52-557f provides: "As used in sections 52-557f to 52-557i, inclusive:

"(1) 'Charge' means the admission price or fee asked in return for invitation or permission to enter or go upon the land;

"(2) 'Land' means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty;

"(3) 'Owner' means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises;

"(4) 'Recreational purpose' includes, but is not limited to, any of the following, or any combination thereof: Hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, snow skiing, ice skating, sledding, hang gliding, sport parachuting, hot air ballooning and viewing or enjoying historical, archaeological, scenic or scientific sites."

Section 52-557g provides: "(a) Except as provided in section 52-557h, an owner of land who makes all or any part of the land available to the public without charge, rent, fee or other commercial service for recreational purposes owes no duty of care to keep the land, or the part thereof so made available, safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure or activity on the land to persons entering for recreational purposes.

"(b) Except as provided in section 52-557h, an owner of land who, either directly or indirectly, invites or permits without charge, rent, fee or other commercial service any person to use the land, or part thereof, for recreational purposes does not thereby: (1) Make any representation that the premises are safe for any purpose; (2) confer upon the person who enters or uses the land for recreational purposes the legal status of an invitee or licensee to whom a duty of care is owed; or (3) assume responsibility for or incur liability for any injury to person or property caused by an act or omission of the owner.

"(c) Unless otherwise agreed in writing, the provisions of subsections (a) and (b) of this section shall be deemed applicable to the duties and liability of an owner of land leased to the state or any subdivision thereof for recreational purposes."

Section 52-557h provides: "Nothing in sections 52-557f to 52-557i, inclusive, limits in any way the liability of any owner of land which otherwise exists: (1) For wilful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; (2) for injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that, in the case of land leased to the state or a subdivision thereof, any consideration received by the

In *Conway II*, however, the court reversed *Manning* and held that the legislature never intended for the act to confer immunity on municipalities. Consequently, the Supreme Court reversed *Conway I* and remanded the case to us with direction to remand the case to the trial court for further proceedings as to the defendant town and the defendant parks and recreation director. As to the remaining defendant, the Connecticut Association of Secondary Schools (association), the Supreme Court directed us to consider "whether the association is an 'owner' under § 52-557f (3) in order to define the scope of the association's liability . . . ." The Supreme Court stated that this question arises because it did not certify any question as to "what duty the association would owe if *Manning* is indeed overruled, thereby stripping the town of its immunity, and concomitantly, whether the association can nevertheless be an 'owner' under the act even though it has not opened its property to the public. Although the Appellate Court concluded that the association was an 'owner' under the act; [*Conway I*], supra, 39 Conn. App. 287; that decision was made in the context of our holding in *Manning*, which we have now overruled." *Conway II*, supra, 238 Conn. 681.[2] We now conclude that the summary judgment in favor of the association should be reversed because *Conway II* creates potential issues of material fact that are different from those addressed by the trial court in *Conway I*.

The relevant facts are set out in *Conway II*, supra, 238 Conn. 655. "The plaintiff, Amy Jeanne Conway,

owner for the lease shall not be deemed a charge within the meaning of this section."

[2] Pursuant to the remand, we directed the parties to file supplemental briefs to address "(1) [w]hether [the association] is immune, under these circumstances, as an owner pursuant to General Statutes § 52-557g, in light of the Supreme Court's [reversal of *Manning* v. *Barenz*, supra, 221 Conn. 256] and (2) [w]hether the record supplies this court with a sufficient factual predicate to determine whether [the association] is an owner pursuant to General Statutes § 52-557?"

brought this action against the town of Wilton (town), David Dixon, the parks and recreation director for the town, and the [association], for personal injuries sustained while participating in a state high school tennis tournament sponsored by the association on premises owned by the town. The plaintiff alleged that on June 9, 1986, the Connecticut Interscholastic Athletic Conference (conference) held a championship tennis tournament for high school girls at the Wilton High School tennis courts. No fee had been charged for the use of the tennis courts. The plaintiff further alleged that, while competing in the tournament, she fell as a result of a defect in the courts and sustained serious injuries to her knee and ankle. Additionally, the plaintiff alleged that the proximate cause of her injuries was the negligence of Dixon and his staff in maintaining the tennis courts, and the negligence of the association in failing to inspect the courts in order to ensure that the town repair any unsafe conditions and in failing to supervise the administration of the tournament."

In *Conway II*, the Supreme Court held that the word "owner," as used in § 52-557f (3), contains a latent ambiguity. After a comprehensive review of the legislative history, the court concluded that the legislature intended that "owner" means "private, not municipal, fee owners." Id., 676. In addition, because municipalities "are in the business of providing parks, pools, ball fields, etcetera, the legislature had less incentive to dangle the carrot of immunity to encourage municipalities to do what they historically have always done." Id., 671–72. "At the time the act was enacted, the legislature was interested in increasing the availability of land for public recreational use. . . . Consequently, municipalities would have had to identify additional land and pay large sums to purchase and maintain it in order to accomplish that goal had the legislation not succeeded. The legislature's sole motive [in granting immunity] was

to encourage private citizens to donate their land as an alternative to this costly enterprise." Id., 673.

The association conducted the tennis tournament at a recreation facility owned by a municipality. On the basis of the municipal-private owner dichotomy that underpins *Conway II*, we conclude that it is necessary to know the nature of the association, its functions and its relationship to the municipality before we can determine whether the act applies.

The material fact about which the trial court found there was no genuine issue was whether the association was in control of the premises during the relevant time period. Such control was conceded[3] by the plaintiff for purposes of the act. At that time, there were no issues as to what kind of entity the association is or what its relationship to the municipality was. The plaintiff contended in the trial court and in this court that the association was subject to liability despite its control of the premises pursuant to the act.

We are persuaded that *Conway II* creates other potential issues of material fact that are relevant to the question of immunity for the association. Whether the association is funded by municipalities, whether it performs municipal functions and whether it acts as an agent of the municipalities that it serves are among the factual issues that could be relevant in determining whether immunity is consistent with the purpose of the recreational use statute as interpreted by our Supreme Court.

---

[3] During oral argument, the plaintiff's counsel made several statements conceding that the association was an owner. He stated that the association "was at one point an owner," that it had "a very brief period of control," and that the association took certain actions "while in control of the land." Counsel also stated that the association's duties were "prior to taking control of the land," that "the time frame in which [the association] was an owner was quite narrow" and that the association's "temporary status as owner should not confer immunity."

The question presented to us on remand is one of law. It requires, however, a factual predicate involving a material fact that can be established only in the trial court. Although the remand does not specifically direct us to remand any issues with respect to the association to the trial court,[4] we construe the order as implicitly allowing a remand to the trial court if necessary.

The summary judgment in favor of the defendants is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.

---

[4] We note that "[i]n carrying out a mandate of [the Supreme Court, we are] limited to the specific direction of the mandate as interpreted in light of the opinion. . . . This is the guiding principle that [the Supreme Court] must observe. . . . [This] court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein. . . ." *Bauer* v. *Waste Management of Connecticut, Inc.*, 239 Conn. 515, 522, 686 A.2d 481 (1996), quoting *West Haven Sound Development Corp.* v. *West Haven*, 207 Conn. 308, 312, 541 A.2d 858 (1988).