[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON REARGUMENT
On September 24, 1994, Luisa Centeno (Centeno) was a passenger in an automobile that was involved in an accident on Interstate 95. The defendant Ronald C. Spear (Spear), the operator of the vehicle in which Centeno was a passenger, swerved his automobile from the center travel lane into the right travel lane in order to avoid a piece of tire tread on the highway. Spear struck the left rear of a van which the plaintiffs allege was parked on the right shoulder of the highway, between the right travel lane and the guardrail. Semac Electric Co., Inc. (Semac) was the owner of the van, and Craig Clinton (Clinton), a CT Page 4405 Semac employee, had parked the van on the shoulder of the highway. After colliding with the van, Spear's vehicle spun to its left and came to rest in the right travel lane where it was struck in the right rear by a vehicle operated by William T. Teichgraeber (Teichgraeber) and leased to him by Enterprise Rent-A-Car, Inc. (Enterprise). As a result of the accident, Centeno sustained serious personal injuries and her mother, the plaintiff Maria Rivera (Rivera), incurred medical expenses.
Rivera has filed a three count revised complaint on behalf of herself and Centeno as Centeno's "parent, natural guardian and next friend." In count one, Rivera and Centeno allege that Clinton and Semac, acting through its employee Clinton, were negligent and careless. Rivera and Centeno allege in count two that Teichgraeber was negligent and careless, and that Enterprise is liable to Centeno for any damage caused by Teichgraeber's operation of the rental car to the extent dictated by General Statutes § 14-154a. Finally, in count three, Rivera and Centeno allege negligence and carelessness by Spear.
Clinton and Semac have filed a motion for summary judgment as to the first count of the revised complaint. They allege that the van which Clinton parked was where it was entitled to be and that, as a matter of law, they were not negligent.
In support of the motion, Clinton has submitted an affidavit which establishes the following facts. Clinton was employed by Semac as a member of its inspection and repair crew. Semac had been hired by the Department of Transportation of the State of Connecticut to inspect manholes that Semac had installed. On the date of the accident, Clinton was conducting an inspection of manholes that Semac had installed approximately five feet to the right of the guardrails located at the edge of the right shoulder of Interstate 95 in West Haven, Connecticut. In order for Clinton to properly inspect the manholes, it was necessary for him to park the van on the right shoulder, also referred to as the breakdown lane, then exit the truck and walk to the area where the manholes were located.
"[T]he weather was clear, visibility was excellent and the roads were dry. The area where [Clinton] stopped the van was a straight stretch of highway with no obstructions to visibility." Clinton further states in his affidavit:
7. I parked the Van approximately two feet to the CT Page 4406 right of the white line separating the right northbound lane from the breakdown lane. My Van was parked perfectly straight and not on an angle.
 8. My Van had a yellow flashing beacon on the roof and a set of red blinking hazard lights on the rear, both of which were operating properly at the time and which I had turned on prior to my exiting the vehicle.
 9. After I had completed my inspection of the manhole and while the Semac Van was so parked in the breakdown lane, and as I was returning to my vehicle, it was struck by the car in which the plaintiff was riding. Prior to it striking my Van I heard a screech of brakes and observed the plaintiff's automobile to be out of control as it veered from the center lane, across the right lane and into the rear of the Semac Van that was stopped in the breakdown lane.
 10. The plaintiff's car crashed into the left rear of the Van while the Van was so stopped in the breakdown lane. The force of the impact pushed the Van a few feet forward and up against the guard rail.
These facts are uncontradicted.[1]
 I
Although the plaintiffs have alleged a bevy of specifications of negligence against Clinton and Semac, at the hearing on the motion for summary judgment, the plaintiffs narrowed their argument to a claim that, even assuming the truth of Clinton's affidavit, a jury could still conclude that his actions violated §§ 14-275b-129 and 14-298-241 of the Regulations of Connecticut State Agencies. Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49.
 A.
Section 14-275b-129 of the Regulations of Connecticut State Agencies, entitled "Warning devices for disabled vehicles," provides: "At least three warning devices which conform to CT Page 4407 FMVSS-125 for use in warning traffic in event of prolonged stops on the highway shall be provided." This regulation is contained in that portion of the regulations promulgated by the commissioner of motor vehicles the purpose of which is to "specif[y] minimum standards for the construction and equipment of type I school buses. . . ." Regs., Conn. State Agencies § 14-275b-1 ("Scope"). There is no claim, nor does it appear, that Clinton was operating a type I school bus. See Regulations of Connecticut State Agencies § 14-275b-2(a) (defining a "type I" school bus). This regulation is inapplicable.
 B.
Section 14-298-241 of the Regulations of Connecticut State Agencies, entitled "Parking in highway right of way," provides: "No person shall allow his vehicle to remain standing or parked within the highway right-of-way except in areas provided for thispurpose and in obedience to signs, signals or the directions of officers." (Emphasis added.) "`[H]ighway right-of-way' means the entire area, including highways, bridges, buildings, structures and lands encompassed by the lateral property lines purchased and owned by the state for the construction and maintenance of highways, bridges and access to service facilities." Regs., Conn. State Agencies § 14-298-236(f).
The evidence is that Clinton parked his van on the shoulder, between the right travel lane and the guard rail. General Statutes § 14-212(1) provides, in part, that "shoulder" shall be construed as defined in General Statutes § 14-1. "`Shoulder' means that portion of a highway immediately adjacent and contiguous to the travel lanes or main traveled portion of the roadway." General Statutes § 14-1(a)(74). This definition identifies the location of the shoulder but does not purport to explain its permissible use. It is the purpose of the area in which a vehicle is parked that determines whether § 14-298-241 of the Regulations of Connecticut State Agencies has been violated.
In its original memorandum of decision granting summary judgment, this court quoted case law which stated: "The shoulders of a highway, while not designed for ordinary vehicular traffic, are intended for use when need arises"; Griffith v. Berlin,130 Conn. 84, 87, 32 A.2d 56 (1943); "such as for allowing distressed automobiles to move out of the flow of traffic (see Webster's Third New International Dictionary [1963 ed], p. 2104)."Bottalico v. New York, 59 N.Y.2d 302, 305-06, 464 N.Y.S.2d 707, CT Page 4408451 N.E.2d 454 (1983); see also Thurston v. Ballou,23 Mass. App. 737, 505 N.E.2d 888, 890 n. 3 (1987). Since the shoulder is designed for standing or parked vehicles, and since there is no evidence of "signs, signals or . . . directions of officers," the court held that Clinton and Semac did not violate § 14-298-241 by parking on the shoulder.
This holding overlooked § 14-298-236(p) of the Regulations of Connecticut State Agencies. Because § 14-298-236(p) specifically defines the word "shoulder", "this court is bound to accept and apply that literal definition." Cagiva North America v. Schenk,239 Conn. 1, 18, 680 A.2d 964 (1996). Although the parties have not cited § 14-298-236(p), it would be plain error for the court to disregard it. Diamond v. Marcinek, 27 Conn. App. 353, 359-60,606 A.2d 1001 (1992), rev'd on other grounds, 226 Conn. 737,629 A.2d 350 (1993), on remand, 32 Conn. App. 828, 632 A.2d 46
(1993); see Republic Ins. Co. v. Pat DiNardo Auto Sales, Inc.,44 Conn. Sup. 207, 211, 678 A.2d 516 (1995) (trial court may take cognizance of statutory law where not to do so would be plain error), affirmed, 41 Conn. App. 686, 677 A.2d 21, cert. denied,239 Conn. 906, 682 A.2d 1005 (1996). Because § 14-298-236(p) "is applicable law, we will address it." Smith v. Zoning Board ofAppeals, 227 Conn. 71, 86 n. 9, 629 A.2d 1089 (1993).
Section 14-298-236(p) of the Regulations of Connecticut State Agencies provides that "`shoulder' means that portion of a highway for emergency use immediately adjacent and contiguous to the travel lanes." (Emphasis added.) Neither the regulation nor any relevant statute defines "emergency." If a regulation does not define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary. Vitti v.Allstate Ins. Co., 245 Conn. 169, 178, 713 A.2d 1269 (1998);State v. Dyson, 238 Conn. 784, 798, 680 A.2d 1306 (1996). "Emergency" is defined as "an unforeseen combination of circumstances or the resulting state that calls for immediate action . . . a pressing need: exigency . . . a usu[ally] distressing event or condition that can often be anticipated or prepared for but seldom exactly foreseen." Webster's Third New International Dictionary (1971). The Semac vehicle was parked on the shoulder to facilitate Clinton's inspection of manholes Semac had recently installed. It cannot be said as a matter of law that this was "emergency use" of the shoulder. See Fennessey v.Pacific Gas Electric Co., 20 Cal.2d 141, 124 P.2d 51, 53
(1942); see also Zimmer v. Miller Trucking Co., Inc.,743 F.2d 601, 605 (8th Cir. 1984). CT Page 4409
Requiring that a privately owned and operated vehicle may only remain stationary on the shoulder of a highway for emergency use is consistent with General Statutes § 14-251 and the definitions of authorized emergency vehicles and maintenance vehicles in § 14-1. Although not directly applicable here, General Statutes § 14-251 prohibits vehicles from remaining stationary on highways under various circumstances. That statute provides, however: "Nothing in this section shall be construed to apply to emergency vehicles and to maintenance vehicles displaying flashing lights. . . ."[2] As observed supra, there is no suggestion that the Semac vehicle was an "emergency vehicle." See General Statutes § 14-1(a)(4), 14-283(a).[3]
Nor is there evidence that the Semac vehicle was a "maintenance vehicle." General Statutes § 14-1(a)(39), defines "maintenance vehicle," as "any vehicle in use by the state or by any town, city, borough or district, any state bridge or parkway authority or any public service company, as defined in section16-1, in the maintenance of public highways or bridges and facilities located within the limits of public highways or bridges." There is no evidence that Semac is a public service company as defined in General Statutes § 16-1.[4] Moreover, the provision for public service companies in the § 14-1(a)(39) definition of "maintenance vehicle" indicates that simply because a privately owned vehicle is being used by a company contracted to do work on a state road does not render it a "maintenance vehicle." This conclusion is buttressed by the legislative history of General Statutes § 14-1(a)(39). See Conn. Joint Standing Committee Hearings, Transportation, 1959 Sess., pp. 78-82.
This court has considered whether this construction of §14-298-241 of the Regulations of Connecticut State Agencies would work an unreasonable result. The rules of statutory construction apply to administrative regulations; Vitti v. Allstate Ins. Co.,
supra, 245 Conn. 178; and it is assumed that the authority promulgating an administrative regulation intended to accomplish a reasonable and rational result. Rizzo Pool Co. v. Del Grosso,240 Conn. 58, 76 n. 18, 689 A.2d 1097 (1997). "Furthermore, even if a statute is considered clear on its face, if a literal interpretation of that statute would lead to unworkable results, resort to other aids to determine legislative intent is appropriate." State v. Cain, 223 Conn. 731, 744, 613 A.2d 804
(1992); see also Conway v. Wilton, 238 Conn. 653, 664-65, CT Page 4410680 A.2d 242 (1996), on remand, 45 Conn. App. 17, 692 A.2d 1303
(1997).
The construction of § 14-298-241 which this court adopts would not work an unreasonable result with respect to "emergency vehicles" — police, fire and ambulance vehicles — since these will usually be found on the shoulder of bona fide emergency purposes. The same may also be said of privately owned wreckers. The use of wreckers to remove disabled vehicles from the highway is contemplated by § 14-298-240 of the Regulations of Connecticut State Agencies.[5]
The application of § 14-298-241 of the Regulations of Connecticut State Agencies may well present a hardship to the Commissioner of Transportation, who is charged with the maintenance of state highways, and to state contractors who perform maintenance work. The legislature, by statute, or the commissioner, by regulation, could have authorized the vehicles of such contractors to use highway shoulders. Neither have done so. While this omission "may work hardship, it is not the function of this court to pass upon the merit of legislation."Kirwan v. State, 168 Conn. 498, 501, 363 A.2d 56 (1975).
 II
Clinton and Semac argue that the plaintiffs have failed to show that Clinton and Semac owed them a legal duty, or that a breach of a legal duty was the proximate cause of the plaintiffs' injuries.
 A.
It is axiomatic that "`[t]here can be no actionable negligence . . . unless there exists a cognizable duty of care. . . . Whether a duty of care exists is a question of law to be decided by the court.' (Citations omitted.) Waters v. Autuori,236 Conn. 820, 826, 676 A.2d 357 (1996)." Pion v. Southern NewEngland Telephone Co., 44 Conn. App. 657, 660, 691 A.2d 1107
(1997). Traffic regulations exist to promote automobile safety. See State v. Anonymous, 36 Conn. Sup. 551, 557, 422. A.2d 867 (1980); General Statutes § 14-298. The act of stopping in the shoulder in violation of § 14-298-241 of the Regulations of Connecticut State Agencies constitutes a breach of a duty of care to fellow motorists.[6]
CT Page 4411
 B.
For the defendant to be held liable, the defendant's negligence must have been both the cause in fact and the proximate cause of the plaintiff's injuries. See Fleming v.Garnett, 231 Conn. 77, 85 n. 6, 646 A.2d 1308 (1994). "The test for cause in fact is`"[w]ould the injury have occurred were it not for [the defendant's] negligent . . . conduct . . . ?`"Stewart v. Federated Dept. Stores, 234 Conn. 597, 605,662 A.2d 753 (1995)." Purzycki v. Fairfield, 244 Conn. 101, 113,708 A.2d 937 (1998). The accident and the plaintiff's injuries would not have arisen were it not for the presence of the truck in the shoulder. Hence, the test for cause in fact is met.
"Proximate cause establishes a reasonable connection between an act or omission of a defendant and the harm suffered by a plaintiff." Stewart v. Federated Dept. Stores, Inc., supra,234 Conn. 606. "The issue of proximate cause is ordinarily a question of fact for the trier." Trzcinski v. Richey, 190 Conn. 285, 295,460 A.2d 1269 (1983). "[I]t becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion. . . ." (Internal quotation marks omitted.) Id., 295.
According to the ordinary proximate causation standard, "`[w]hen there is an intervening force between the defendant's action and the plaintiff's injuries . . . proximate cause [exists when] the defendant's negligence was a substantial factor in causing the plaintiff's injuries and . . . the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence.' (Internal quotation marks omitted.) Fleming v. Garnett, 231 Conn. 77, 86, 646 A.2d 1308
(1994). . . ." Elliott v. City of Waterbury, 245 Conn. 385, 402,715 A.2d 27 (1998). A superseding cause may discharge a defendant's liability where it "`so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in any degree, produces the injury. . . ." Corey v. Phillips, [126 Conn. 246, 255,10 A.2d 370 (1939)]." Wagner v. Clark Equipment Co., 243 Conn. 168, 180,700 A.2d 38 (1997).
Other states have addressed the specific issue of whether the illegal presence of a vehicle in the shoulder can be the proximate cause of injuries to a person in a vehicle that collided with the illegally parked vehicle. In Mayer v. Rockett,362 Mass. 22, 283 N.E.2d 836 (1972), the Massachusetts Supreme CT Page 4412 Court held that "[the defendants'] violation of the statute and regulations cited was not only evidence of negligence, but also could properly have been found to be a proximate cause of the accident which occurred." Similarly, in Storer Communications,Inc. v. Burns, 195 Ga. 230, 393 S.E.2d 92, 93 (1990), Georgia's Court of Appeals held that "[e]ven assuming that it may not have been foreseeable that, under the circumstances a collision with the negligently parked car would occur as the result of hydroplaning, it cannot be said that, as a matter of law, it was not foreseeable that a collision would somehow occur." New York's Appellate Division has held, where a vehicle collided with a bus that parked on the shoulder in violation of a traffic regulation, that there is "little room for doubt that a factual issue as to proximate cause is presented." Dowling v. Consolidated CarriersCorp. , 103 N.Y. App. Div.2d 675, 677, 478 N.Y.S.2d 883 (1984), aff'd, 65 N.Y.2d 799, 482 N.E.2d 912, 493 N.Y.S.2d 116 (1985).
Although, as the defendants have emphasized, there were other factors that caused this collision, such as the presence of the tire tread in the road and the defendant Spear's loss of control of his vehicle, it cannot be said as a matter of law that any of the other contributing causes of the accident superseded Clinton's and Semac's negligence so completely that those factors alone would have led to the plaintiffs' injuries. See Wagner v.Clark Equipment Co., supra, 243 Conn. 180. Because a genuine issue of material fact remains as to whether the negligence of the defendants Semac and Clinton proximately caused the injuries suffered by Rivera and Centeno, the prior decision of the court granting the defendants' motion for summary judgment is vacated and the motion for summary judgment is denied.
BY THE COURT
Bruce L. LevinJudge of the Superior Court